## WILLIAMS *v.* STATE.

### Opinion delivered March 11, 1899.

1. INSTRUCTIONS—GENERAL EXCEPTION.—A general exception to an in-
struction is not sufficient to raise the objection that it is defective in
form. (Page 267.)

2. EVIDENCE—GENERAL EXCEPTION.—Where a witness, called to impeach
the general reputation of defendant, who had testified for himself, was
asked, "Do you know his reputation in the neighborhood?" and replied
that he did, and that such reputation was bad, and it was apparent from
the cross-examination that the witness meant that defendant's general
reputation for truth and immorality in the neighborhood in which he
lived was bad, a general exception to the question will not be sufficient

on appeal to raise the objection that such question was not in the form
required by the statute.   (Page 267.)

3.  WHEN ERROR CURED BY INSTRUCTION.—If such question and answer
    might otherwise have been misleading, the error was cured by an in-
    struction that to impeach a witness in that way it must be shown that
    his general reputation for truth and immorality in the neighborhood in
    which he lived is bad.   (Page 268.)

4.  EVIDENCE—RAPE—COMPLAINT BY PROSECUTRIX.—Though it is compe-
    tent for the state in a rape case to show that the prosecutrix made com-
    plaint of the injury, yet the particular facts which she stated are not
    admissible in evidence except where elicited on cross-examination or
    by way of confirming her testimony after it has been impeached.
    (Page 268.)

5.  SAME—RES GESTÆ.—The particulars of a statement by the prosecutrix
    in a rape case, made fifteen minutes after the crime was said to have
    been committed, are not admissible as part of the *res gestæ*, being only
    a narration of a past transaction.   (Page 268.)

6.  SAME—WHEN ERROR NOT PREJUDICIAL.—The improper admission of
    the particulars of a statement made by a prosecutrix in a rape case is
    not prejudicial if such statement contained nothing that was not ad-
    mitted to be true.   (Page 269.) ·

7.  WHEN ERROR CURED BY REMITTING EXCESSIVE PUNISHMENT.—While it
    is error for the jury to determine the number of years of punishment
    by a ''quotient verdict,'' under a precedent agreement to be bound
    thereby, such error will be cured by remitting so much of the punish-
    ment as exceeds the minimum punishment fixed by law.   (Page 270.)

Appeal from Columbia Circuit Court.

CHARLES W. SMITH, Judge.

STATEMENT BY THE COURT.

The appellant, Fern Williams, a negro boy eighteen years
of age, was indicted for the crime of rape alleged to have been
committed upon Julia Lagrone, a negro woman a year or two
older than defendant.   She testified on the trial in substance as
follows:   She was returning from church alone and on foot on
a Sunday afternoon when she was overtaken by the defendant,
who had attended the same church.   After some remarks about
the services at church, he made an indecent proposal, which she
declined.   He thereupon caught hold of her, and threw her
down, and ravished her.   She testified that she called for as-
sistance, and fought him with all her strength, and complained
of the crime to Reuben Warren, the first person whom she
afterwards met.

The defendant, who took the stand in his own behalf, admitted that he had sexual intercourse with the prosecuting witness at the time and place named by her, but stated that it was with her consent. "The reason why she got mad," he said, "she asked me for a dollar after I got through, and I did not have a dollar, and told her I would not pay it; and she says, 'you son of a bitch, you have to pay me,' and tried to fight me, and that is how the row came up, and I flung her down."

The jury returned a verdict finding defendant guilty of an assault with intent to rape, and assessed his punishment at five years in the state penitentiary. The evidence, though contradictory, was sufficient to support the verdict.

*Smeade & Powell*, for appellant.

Every indictable offense must be committed with a felonious intent. Bish. Cr. Law, §§ 242–7, 427. The second indictment is based on an isolated fact, and hence erroneous. 45 Ark. 165; 57 *ib.* 520. As to what constitutes a "reasonable doubt," see 62 Ark. 298; 5 Cush. 320; 1 Gray, 534; Bouv. Dict. 563, "Doubt." It was error to admit the testimony of witness Warren on the theory that the matters referred to therein were part of the *res gestœ.* 58 Ark. 47; 19 *id.* 490; 46 *id.* 141; 43 *id.* 289; *ib.* 102. Nor was it evidence of the commission of the offense. 38 Ind. 39; 17 Ohio, 593; 18 *ib.* ·99; 8 Oh. St. 643; 1 Denio, 19. A quotient verdict is illegal, and can be impeached in a criminal case. Sand. & H. Dig. § 2268; 28 Ark. 155; 29 Ark. 248; 49 Ark. 454; 44 Ark. 115; 57 Ark. 1; Thomp. & Merr. Juries, 409–411.

*Jeff Davis*, Attorney General, and *Chas. Jacobson*, for appellee.

When a defendant elects to take the stand, he may be impeached as any other witness may. 46 Ark. 141; 56 Ark. 4; 25 S. W. 603; *ib.* 279; Und. Cr. Evid. § 78; 1 Bish. Cr. Proc. 1185; 76 Mo. 328; 76 Mo. 35. And this is true, even though his good character may not have been previously put in issue. 46 Ark. 141. Declarations, spontaneous and unpremeditated in character, made so closely in connection with the principal act as to form a part thereof, are admissible as *res gestœ.* Und. Cr. Ev. § 97; 43 Ark. 103.

RIDDICK, J., (after stating the facts.)   Several objections have been presented to the instructions given by the presiding judge to the jury, but we are of the opinion that they fairly stated the law of the case.   Some of the instructions may be slightly defective in form, but we have several times held that a general objection is not sufficient to raise a question of that kind.   *St. L., I. M. & So. Ry. Co.* v. *Pritchett, ante,* p. 43, 48 S. W. 809; *Phœnix Insurance Co.* v. *Flemming,* 65 *ib.* 54, 44 S. W. 464.

The defendant testified in his own behalf, and afterwards the state introduced several witnesses to impeach his character for veracity.   To one of these witnesses, who had stated that he had known the defendant for three or four years—"ever since he has been in that neighborhood"—the prosecuting attorney propounded the question:   "Do you know his reputation in the neighborhood?"   (Question objected to by defendant, objections overruled, and exceptions saved.)   Witness answered that he did, and stated that defendant's reputation was bad.   On cross-examination, witness stated that he had heard talk about defendant "raising rackets, drawing his pistol at church, and being in people's watermelon patches."   Had never heard any one say he would tell a lie, but judged him from his character in the neighborhood in which he lived.   It is evident that the only tenable objection to the question propounded to this witness, and to which the defendant objected, is that it was not sufficiently full and explicit.   No one can doubt that the intention was to ascertain whether the witness knew the general reputation of defendant for truth and immorality in the neighborhood where he lived.   This is apparent from the cross-examination which followed, and from the fact that the question was correctly put to other witnesses called by the state for the same purpose, while the defendant in the examination of Church Williams, one of his rebutting witnesses on this question of reputation, made a lapse very similar to that complained of by him against the prosecuting attorney.   The prosecuting attorney was guilty of some carelessness in putting the question in that form; but if the attention of the presiding judge had been called to the defect, he doubtless would have compelled him to put the question in the form required by the statute.

The bill of exceptions shows that the defendant made a general objection to this question, which was overruled, and exceptions saved. The stenographer and circuit judge have since certified that he, in fact, made no objection, but the judge states that he allowed the bill of exceptions to show that objections were made and exceptions saved in order that defendant might raise the question as to whether it was competent to impeach the character of a defendant who testified in his own behalf. As the bill of exceptions has not been amended, we must treat it as correct; but we regard the controversy as immaterial, for the objection, being general, was not sufficient to raise the question concerning the form of the interrogatory propounded to the witness. We must treat it as an objection, not to the form of the question, but to the question itself in any form; and, as the state had the same right to impeach the testimony of the defendant as that of any other witness, the objection cannot be sustained.

Again, even if there had been proper objection, the error was cured by the charge of the judge, who, at the request of the defendant, stated to the jury that to impeach a witness in that way it must be shown that his general reputation for truth and immorality in the neighborhood in which he lived is bad.

The next exception relates to the testimony of Reuben Warren. He was permitted, over the objection of the defendant, to give the particular facts which Julia Lagrone, the prosecuting witness, related to him when making complaint of the assault. It is competent, on a charge of rape, for the state to show that the prosecuting witness made complaint of the injury, but the particular facts stated by her are not admissible on direct examination. They may be brought out by defendant on cross-examination; and if the defendant denies that the prosecuting witness made complaint, and undertakes to impeach the testimony on that point, then the particular facts stated by her may be proved by the prosecution, in order to confirm her testimony that she made complaint. *Pleasant* v. *State*, 15 Ark. 624; 3 Greenleaf, Ev. § 213. We are of the opinion that the statement of Julia Lagrone was improperly admitted in this case.

The circuit judge no doubt understood the law as we have

stated it, but admitted such statement on the ground that they were part of the *res gestæ*. We do not concur in this view of the matter. The statement was made fifteen minutes after the crime was said to have been committed. The prosecuting witness, Julia Lagrone, had left the place of the assault. The statement to Warren was not made by her spontaneously under the excitement caused by the assault, but was made in response to an inquiry of Warren. "As I passed her," he said, "I noticed she was crying, and had dirt on her, and I. asked her what was the matter, and she said Fern had been down there trying to make her do what she did not want to do." This was only the narration of a past transaction, and not a part of the *res gestæ*.

But, while we think the statement was improperly admitted, we do not see how it could have prejudiced the defendant. This is not a case where there is a question concerning the identity of the defendant with the party committing the crime. If there was any doubt on that point, the statement of Julia Lagrone to Reuben Warren, admitted in proof, that Fern committed the assault would have been prejudicial. But the defendant admits that he had sexual intercourse with Julia Lagrone at the time and place named by her. He admits that they had a quarrel, and that he threw her down, but states that the assault was after the sexual act had taken place, and was brought about by his refusal to pay the price which she demanded. Now the only part of the statement of Julia Lagrone proved by Reuben Warren not properly admitted was that giving the name of the party who had assaulted her. The other portion of the statement is nothing more than a complaint that an assault had been made. But giving the name of the defendant did not prejudice him, for, from his own admissions on the stand, there is no question, if a rape was committed, that he is the guilty party. The only question is whether the sexual connection, which he admits that he had with Julia Lagrone, was with her consent, or by force and against her will. We are therefore of the opinion that defendant was not prejudiced by the evidence on this point.

The last contention is that the verdict was arrived at by lot. Evidence bearing on this point was introduced both by

the state and defendant at the hearing of the motion for new trial. No objection was made in the circuit court, and no question is raised as to the admissibility of such evidence. The facts are admitted, and we need not therefore discuss the method by which they were established. They amount to this, that the jury, after finding that defendant was guilty, arrived at the punishment to be assessed against him by adding the number of years that each juror was in favor of assessing, and dividing the aggregate by twelve; it having been previously agreed that the quotient thus obtained should be the number of years of imprisonment assessed against defendant. This method of arriving at a verdict has been frequently condemned, and was plainly wrong.* *Goodman* v. *Cody*, 24 Am. Rep. 808, and note; Thompson, Trials, § 2602; Thompson & Merr. Juries, § 409.

It did not, however, affect the finding that the defendant was guilty, and furnishes no reason why the verdict in that respect should be set aside. The punishment assessed was five years in the penitentiary. The lowest punishment allowed for an assault with intent to commit rape, of which crime defendant was convicted, is three years' imprisonment in the penitentiary. As the defendant may have been prejudiced by the improper method of arriving at that portion of the verdict, we will modify the judgment, so as to allow the sentence to stand for three years' imprisonment only. *Brown* v. *State*, 34 Ark. 232. With this modification, the judgment will be affirmed.

Mr. Justice Battle does not concur in the view that this court can modify the judgment of the circuit court, but favors a reversal.

---

*That a "verdict has been decided by lot" is one of the statutory grounds for new trial in criminal cases. Sand. & H. Dig. ¿ 2268. (Reporter.)