## TRULOCK *v.* STATE.

Opinion delivered July 16, 1902.

1. HOMICIDE—EVIDENCE.—On a prosecution of defendant for killing his wife it was not error to admit the testimony of an eye witness that defendant did the killing, that she recognized his walk, though she admitted that she could not see very well, and that one reason she thought it was defendant who did the killing was that deceased said it was he. (Page 562.)

2. EVIDENCE—RES GESTAE.—On a prosecution for murder, it was not error to admit as part of *res gestae* a statement of deceased, made just before she was shot, which tended to prove that she recognized the person about to kill her as the defendant. (Page 562.)

3. SAME—HEARSAY.—Testimony of a witness that he was told that a No. 12 Winchester shell was picked up where deceased was killed is inadmissible. (Page 562.)

Appeal from Hempstead Circuit Court.

JOEL D. CONWAY, Judge.

Reversed.

STATEMENT BY THE COURT.

The appellant was indicted for murder in the first degree, pleaded not guilty, was tried and convicted, and appealed to this court.

The indictment charges that on December 20, 1901, the appellant willfully, unlawfully, feloniously and of his malice aforethought, and with premeditation and deliberation, did kill and murder Delia Walker, by shooting her with a gun, etc.

The evidence tended to show that Delia Walker was a colored woman, and that she and the appellant had been living together in the same house for about two years before Delia Walker was killed. That a very old negro woman (about 99 years of age) was living in the same house with them at the time of the killing, and had been living there for quite a while before. That on Friday night before the killing (which occurred at about 10 or 11 o'clock on Saturday night following) the appellant and the deceased had a "spat" (to use the language of the old woman), and that the de-

fendant had beaten and bruised her mouth, and had said he would kill her, that she did not treat him right.

R. J. Stringfellow testified: "I was on the jury that held the inquest over the dead body of Delia Walker. She was shot under her left breast. None of the shot passed through her body. A No. 12 empty shell was picked up there. The deceased was about 27 or 28 years old. Her body was at the foot of the bed. That was in Hempstead county, Arkansas. It was just before last Christmas." Cross-examination: "They said the No. 12 shell was picked up there. I did not see it picked up, and don't know where it came from. [Appellant here moved the court to exclude this evidence relating to the cartridge shell as hearsay, and, on his motion being overruled, excepted.] I went there either on Saturday night or Sunday night, about a day and night after the killing. She was shot with squirrel shot. I lived about eight miles from where she lived." Redirect: "I examined the shell. It looked like it had been recently used."

Eliza Lattie testified: "I am nearly a hundred years old. I was living with Delia Walker when she got killed. When she was killed, she was right in the house with nobody but me and her two little children. She was shot about 10 or 11 o'clock at night, when she was ironing. On Friday night she and the defendant had a little spat. He choked her, and threw her down on the floor. She told him to let her alone. She hadn't done anything to him. She ran to the bed, and threw one of the babies in on me. I heard her make for the door. He caught her, and threw her back. Then she got out on to the gallery. When she came back, they sat there and quarreled ever so long, and he struck her three times on the mouth, and said, 'I am going to kill you, for you don't treat me right.' She said, 'I treat you as near right as I can.' I had been living there with them about two years. Defendant had been living there all the time. On the night of the killing — Saturday night — I heard some one walking, and made mention of it. Some one threw a little stick on the gallery, and went around to the chimney and struck on it. Delia called to the defendant and said, 'Tom, if you want to come in, why don't you come in like a man? Why do you treat me that way?' He made no answer. About that time he jabbed against the window and broke it. He started away from the window, then came back, and began firing. [Appellant objected to this evidence, and moved to exclude it, and, on his motion

being overruled, excepted.] She said, 'Lord, I am shot! I am shot!' and wheeled off like she was going to the bed, but fell before she got to it. There was a man at the window whom I took to be the defendant. I knew his walk. I saw him as he passed the window and went around toward the well. Deceased dropped the iron when she was shot. I had gone into a dark corner. I know it was the defendant that shot her." Cross-examination: "The walking was right by the gallery and chimney. The ground was hard. I knew his walk. He walks very flat—slaps his foot. Delia told me that was nobody but Tom. He did not speak a word. I can't see very well all of the time. Sometimes I can. I have been plagued with erysipelas. I have been blind once or twice. I couldn't see the defendant well enough to distinguish him that night. He fired but one shot. Delia had nailed up the window. Defendant had been staying there. He seemed to be welcome. He would come in as if he were at home. I saw the man by the moonlight as he passed the window. I took him to be the defendant. He and Delia didn't live agreeably all the time. Sometimes they were friendly, and sometimes they would spat. They were at outs at that time. He had whipped and choked her the night before, and told her he was going to kill her. It was just after the shot that I saw the man pass the window. He was then running. He went around by the well in a hurry. I was scared. The lamp was burning." Q. "You didn't know it was Tom by seeing him?" A. "She said it was Tom, and I believe it was Tom until yet. [Appellant moved to exclude this answer, and, on his motion being overruled, excepted.] I know it was him by his walk. He broke the window, punched it out with a stick or gun. He pushed the nail out when he punched the window. It was a common occurrence for him and Delia to fall out and have spats. Sometimes they would fight a little. I never heard him threaten to kill her until the night before she was killed. I had talked to him, and told him that he and she could get along. He knocked her down, and hit her in the mouth three times." [Appellant moved to exclude the testimony of this witness on the point of the identification of appellant at the time and place of the killing as hearsay and incompetent, and, on his motion being denied, excepted.]

Jim Smith testified: "The defendant is my sister's son. I knew Delia Walker. I saw the defendant on Saturday night, the night she was killed. He came to my house in the evening. About

dark he told me he believed he would step uptown a while, and started off like he was going to town. About a half hour afterwards, my nephew, Edward Strong, came and asked me to go with him, which I did. When I returned home, about 10 or 11 o'clock, the defendant was there and asleep." Cross-examination: "Edgar Strong lives between me and where Delia Walker was killed. The defendant and I left Fulton about dusk. He ate supper at my house that night. He had been gone about a half hour when Ed Strong came. He was in bed, and was still when I got back home. I took him to be asleep. I spoke to him, and he did not answer." Redirect: " I own no gun except a six shooting No. 12 Winchester shotgun, a repeater. It was in my house when I left that night, and also when I returned. It was right over my bed. I could lie in bed and see it. I did not examine it that night or next morning. It was loaded with No. 4 squirrel shot. Defendant did not have the gun with him when he left my house. I did not see him from the time he left until I returned, about 11 o'clock."

Drucilla Smith testified: "I was at home the night Delia Walker was killed. Tom Trulock, the defendant, stayed there that night. He came with my husband, Jim Smith, about dark. They ate supper, and he said he believed he would go uptown. A while after he left, Ed Strong came, and got after Jim to go to the country with him. Jim went. I guess it was between 10 and 11 o'clock when defendant got back from town. He went to bed. He was in bed when Jim got back. Jim owns a shotgun. It was in the house that night, and stayed there all the time. The defendant did not take it with him. I saw him when he left and when he returned." Cross-examination: "I observed the gun so closely because it was right up over the kitchen door. It was not over the bed at all. I was in and out of the room at times."

Over the appellant's objection, and to which he excepted, the court gave to the jury instruction numbered 3, which is as follows:

"3. The killing being proved to have been done by the defendant, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused, unless by the proof on the part of the prosecution it is sufficiently manifest that the offense committed only amounted to manslaughter, or that the accused was justified or excused in committing the homicide."

*James H. McCollum,* for appellant.

The court committed error in admitting hearsay evidence. 56 Ark. 350; 62 Ark. 494; 63 Ark. 457; *id.* 470; 66 Ark. 110; 69 Ark. 648. It was also error to allow witness, Eliza Lattie, to testify as to her opinion. 52 Ark. 345; 58 Ark. 390; 63 Ark. 382.

*George W. Murphy, Attorney General,* for appellee.

HUGHES, J., (after stating the facts). While the testimony of the old woman, Eliza Lattie, as to the identity of the person who did the shooting that killed Delia Walker was not of the most satisfactory character, it was competent testimony, and there was no error in refusing to exclude it from the jury. It was for the jury to determine its credibility and give it such weight as they thought it entitled to. She testified she saw the man that did the shooting as he passed the window, and took him to be the appellant; that she knew him by his walk. She admitted she could not see very well, and said, in effect, that one reason she thought it was the defendant was that Delia said it was Tom, and she believed it was. But she swears positively that it was the defendant, but said again that she could not see him well enough to distinguish who he was.

The testimony that Delia, the deceased, said, "Tom, if you want to come in, why don't you come in like a man? Why do you treat me that way?" was competent, and there was no error in allowing it. It was part of the *res gestae.*

The testimony of Stringfellow about the shell being picked up at the house where the shooting was done was incompetent. It was hearsay testimony. He did not testify to it as a fact, but as having been told him by another. He did not know even by whom it was said to have been picked up. He did not profess even to know it. This was material, as it was brought out to support the theory that the defendant had a gun that carried that kind of a shell, a No. 12 Winchester shell. There was no evidence that he had a gun that carried that sort of a shell. There was evidence that his kinsman, Smith, had a No. 12 repeating Winchester shotgun, and that defendant stayed at Smith's house that night, but there was no proof that defendant had it at any time. What effect this testimony may have had on the jury it is impossible for us to tell. The state insisted on it as competent, and the prosecuting attorney must have believed that it was material, and it was allowed improperly over the objection of the defendant.

The testimony is meager and weak on the whole case. For this error the judgment must be reversed, and the cause remanded for a new trial.

Instruction numbered 3 given to the jury over the defendant's objection, and to which he saved exceptions, is defective. It might be construed to assume the killing was proved to have been done by the defendant. Two of the judges think it is fatally defective in substance, and two think it only defective in form, and that, being defective in form only, a general objection to it was not sufficient, but that there should have been a special exception, calling attention of the court to the defect, that he might have thereupon corrected it; that it was unfair to the court to lay in ambush, as it were, and say nothing about an error which the court would probably have corrected, if his attention had been called to it, and wait to spring the objection to it for the first time in this court. As to this, see the following cases in this court: *St. Louis, I. M. & S. Ry. Co.* v. *Pritchett,* 66 Ark., 46; *Williams* v. *State,* 66 Ark. 264.

For the error indicated in allowing the testimony of Stringfellow as to the shell, the judgment is reversed, and the cause is remanded for a new trial.

WOOD, J., did not participate.

BUNN, C. J., dissents.