## SEXTON v. STATE.

### Opinion delivered October 18, 1909.

1. APPEAL AND ERROR—WHEN ERROR HARMLESS.—Appellant can not complain because the jury found him guilty of assault with intent to commit rape, though the evidence was to the effect that he was guilty of rape if anything.   (Page 590.)

2. RAPE—EVIDENCE—COMPLAINT BY PROSECUTRIX.—In a prosecution for rape it is competent for the State to prove the fact that the prosecuting witness made complaint of her injury, but not the details as to what she said, unless the defense undertakes to impeach her testimony on this point, in which case the particular facts stated by her may be proved in corroboration of her testimony.   (Page 591.)

3. SAME—EVIDENCE—THREAT TO RUIN PROSECUTRIX.—In a prosecution for rape it was not error to permit the State to prove that four or five months before the crime is alleged to have been committed the defendant had threatened to ruin the prosecuting witness if he could get hold of her.   (Page 593.)

4. SAME—CROSS EXAMINATION OF WITNESS.—In a prosecution for rape where a witness for the defendant testified on direct examination that the prosecuting witness spent at his house the night after the crime was alleged to have been committed, and that she made no statement to him as to the outrage alleged to have been committed on her, it was not error to permit the State on cross examination to show that the prosecuting witness during that night communicated information of the outrage to the wife of witness.   (Page 594.)

Appeal from Independence Circuit Court; *Charles Coffin,* Judge; affirmed.

*Oldfield & Cole,* for appellant.

1. In certain instances it is permissible to show that the prosecutrix in a rape case made complaint of the outrage soon

after it happened, but the details of that complaint or the naming of her assailant is not admissible. 63 Ark. 470; 66 Ark. 264; 11 Am. Cas., 95 and note.

2. The alleged declaration of appellant to the witness Wilson some three to five months prior to the time this crime is charged to have been committed was improperly admitted. There is nothing in the statement, if made, which is improbable, to show that the prosecutrix was the girl referred to. Before threats are admissible in evidence, they must be shown to have been connected with the offense charged and directed to or spoken of the injured party. 59 Ark. 303; 46 S. W. 39; 86 Fed. 106; 29 C. C. A. 600. See also 82 N. C. 268.

3. It was error to permit a cross examination of the witness Milligan on matters not responsive to his examination in chief. What he advised about the matter in the absence of the defendant, and what the father of prosecutrix said, was manifestly improper and prejudicial. It was not relevant; it was not cross examination.

*Hal L. Norwood,* Attorney General, and *C. A. Cunningham,* Assistant, for appellee.

1. There is nothing objectionable in Birmingham's testimony. He was not allowed to detail what the prosecutrix said. Its only purpose and effect was to show that she made complaint, and that process issued for the appellant. 63 Ark. 474. Nowhere does his testimony show any description of or reference to appellant on the part of the prosecutrix. 29 Am. & Eng. Cas. 95 and note; 66 Ark. 268.

2. His remark to Tom Wilson concerning prosecutrix was admissible to show appellant's intent. Wilson says she was the only girl there of any *size,* that the rest were all *small* children.

3. Milligan's cross examination was legitimate. He had testified in chief that prosecutrix had asked her father if he (Sexton) had given him any money, which would go to show that her father had attempted to settle the matter for money. It was proper on cross examination to show what he did and said when informed of the outrage upon his daughter.

McCulloch, C. J. Defendant, Charles Sexton, was indicted for the crime of rape, alleged to have been committed by having carnal knowledge of one Maud Bethel forcibly and against her

will; and on trial therefor he was convicted of assault with intent
to commit rape, his punishment being fixed by the jury at con-
finement in the penitentiary for three years.  Maud Bethel tes-
tified that the defendant, on the day named in the indictment,
came to her home and forcibly and against her will had sexual
intercourse with her.  The defendant denied this, and testified
on the contrary that he had never had sexual intercourse with
Maud Bethel, either with or without her consent.  The jury set-
tled the issue by their verdict, which the evidence was sufficient
to sustain.  The tendency of the evidence was to show that the
defendant was successful in his attempt and committed the crime
of rape, if he made any assault at all on the girl; but the jury
released him from the penalty of the higher crime and found
him guilty only of the lower crime of assault with intent to.
commit rape; and he cannot complain of this leniency.  *Benton*
v. *State,* 78 Ark. 284; *Price* v. *State,* 82 Ark. 25.

The defendant objected to the introduction of certain tes-
timony by the State, and saved his exceptions to the ruling of the
court in admitting it.  The first exception insisted on here is that
to a portion of the testimony of a witness named Birmingham.
This witness was in the neighborhood where the offense is alleged
to have been committed, and testified that, after having heard that
the offense had been committed, he went over to see the girl, and,
after having heard her complaint, went with her father to procure
a warrant for defendant's arrest.  The portion of his testimony
quoted by counsel for defendant as objectionable is as follows:

"Q.  Where was it she made the complaint?  A.  At Riley
Milligan's.  Q.  Who was present?  A.  Riley Milligan and
Riley's wife.  Q.  In getting a complaint from her at that time,
were Riley Milligan and his wife present at the time?  A.  That
she gave me the complaint?  Q.  Yes.  A.  Yes, they were both
present.  Q.  If questions were asked her concerning this affair,
who asked them?  A.  Riley Milligan.  (Objected to by defend-
ant, overruled, exceptions saved.)  Q.  Where were you at the
time, and where were these other parties at the time she made the
complaint?  A.  I was at Riley Milligan's in the house, or on the
little porch between the houses, rather, and they were there, too.
Q.  What was done in reference to this matter?  (Objected to
by defendant.)  Q.  In other words, was the process issued or

asked for for the apprehension of this defendant? (Objected
to by defendant, overruled and exceptions saved.) A. Yes, sir.
Q. Where did you go after that? A. I went back to the meet-
ing ground and learned that the boy had his gun and was gone.
(Objection sustained.) Q. What did you go to the meeting
ground for? A. I went over there for church and to see if he
(defendant) was there, and he was gone. I had understood that
he was going over there to meeting."

Further statements along the same line were made by the
witness, but the above serves to show the part objected to by the
defendant. The basis of defendant's objection to this testimony is
that, in effect, it was allowing the witness to state that the girl in
making her complaint to him gave the name or description of
her assailant, and that on the strength of it the witness at once
caused a warrant of arrest to be issued for the defendant's ap-
prehension. Such is not, we think, the effect of his statements.
He merely stated that she made complaint in his presence, and
that immediately thereafter he went with her father to procure
a warrant. His testimony does not show that he obtained from
her information as to her assailant's identity, for he expressly
stated that before he went to see the girl he had already heard
about the commission of the crime, and had been over to de-
fendant's house to see him. This court, in a similar case, said:

"The rule on the subject is that the officer making the arrest,
as in this case, should testify on the stand no further as to his
reason for seeking and arresting the criminal than that there was
an outcry or information furnished him in other ways of the com-
mission of the crime, and that thereupon he proceeded to search
for and apprehend the criminal. Whatever information he may
obtain as to the description and identity of the alleged criminal is
for his use in making the arrest, but not for his use as a wit-
ness; for it is but hearsay after all." *Davis* v. *State,* 63 Ark. 470.

In *Williams* v. *State,* 66 Ark. 264, Judge RIDDICK, speaking
for the court, stated the law on the subject to be as follows: "It
is competent, on a charge of rape, for the State to show that
the prosecuting witness made complaint of her injury, but the
particular facts stated by her are not admissible on direct ex-
amination. They may be brought out by defendant on cross
examination; and if the defendant denies that the prosecuting

witness made complaint, and undertakes to impeach the testimony on that point, then the particular facts stated by her may be proved by the prosecution, in order to confirm her testimony that she made complaint." To the same effect, see *Skaggs* v. *State*, 88 Ark. 62.

We are of the opinion that the testimony admitted in this case does not offend against the rules of law stated in the cases cited above, and that no error was committed in this respect.

The next assignment of error is as to the admission of the testimony of the witness Tom Wilson concerning an alleged remark made about the girl, Maud Bethel, four or five months before the crime is said to have been committed. The testimony objected to is as follows:

"I had defendant under arrest, and we passed where the girl and three smaller children were in the field playing. As we passed, we spoke to the girl, and he said, 'There is a girl I would like to get hold of—I'll be damned if I don't ruin her.' I asked him if he thought he could ruin her, and he said, 'If I didn't, I would come damn near it."

This testimony is first objected to on the ground that it is not shown definitely that the remarks applied to the prosecutrix; but we are of the opinion that it is shown by the testimony of this witness that, under the circumstances, the remarks must have applied to this girl. He evidently was referring to a girl of sufficient age for sexual intercourse, and the others in the party were small children, to whom the remarks could have had no application.

We think also that the testimony was competent as tending to corroborate the testimony of the prosecutrix; for the remark of the defendant was a declaration as to the sinister purpose which he harbored at that time, and the girl's testimony tends to show that he afterwards put his atrocious design into execution. She stated that the defendant came to her house on an occasion about two weeks before he ravished her, and said he wanted to "scuffle with her," but that she declined, and he went away without attempting to do anything; and that at the time he ravished her he came again to the house, and when he came in said, "I've got you now," and threw her down on the bed and ravished her. He denied that he had ever had intercourse with

her, or had ever tried to do so, or had ever made any improper proposals to her.

The only other assignment of error is as to the matter brought out by the prosecuting attorney on cross examination of Riley Milligan. Maud Bethel testified that on the evening of the day the defendant ravished her she went to Milligan's house, where her father was at work, and there spent the night; that she told Milligan and his wife that night of the outrage perpetrated on her, and told her father the next day. Milligan was called to the witness stand by the defendant and testified in chief that Maud and her father spent the night in question at his house, but that she made no statement to him that night concerning the assault on her; that the next morning he heard her ask her father if Mr. Sexton, defendant's father, had paid him any money. The defendant had attempted to prove by other witnesses that Maud and her father were trying to extort money from the Sextons to prevent prosecution; and the prosecuting attorney was permitted to show by Milligan on cross examination that he received information through his wife that night of the alleged assault on the girl by defendant, and that he told the girl's father of it that night and advised him to have the defendant arrested; that the girl's father, when told of the outrage, threatened to get his gun and kill the defendant. We think this was legitimate cross examination. The witness had stated in his examination in chief that the witness and her father had spent the night in his (Milligan's) home without anything being said about the assault; and that the next morning they were heard talking about getting money from defendant's father. The cross examination developed the fact that the witness received that night full information concerning the outrage, and communicated it to the girl's father, whose indignation was aroused to a high pitch, and that the witness advised the prosecution of the defendant.

We are unable to discover anything in the testimony which was prejudicial to the defendant except the contradiction of his witness Milligan, and that was legitimate.

Judgment affirmed.