LIN MANUFACTURING COMPANY OF ARKANSAS, INC., ET AL
v. HARRY COURSON

5-4765                                                436 S.W. 2d 472

Opinion Delivered February 3, 1969

---

*Arnold, Hamilton & Streetman* for appellants.

*Switzer & Griffin* for appellee.

GEORGE ROSE SMITH, Justice. The plaintiff-appellee, Harry Courson, was injured when a truck owned by Lin Manufacturing Company and being driven by its employee ran a stop sign and struck Courson's car. In appealing from a verdict and judgment for $55,000 Lin and its truckdriver question four rulings by the trial court and challenge the size of the verdict.

I. It is argued that the defendants were prejudiced by Courson's unnecessary references to the matter of liability insurance. On cross-examination counsel questioned Courson at some length about earlier incidents of injury and hospitalization. Courson was asked: ''How many doctors have you consulted in the last few years concerning your various ailments?'' In reply, Courson named eight doctors, including Dr. Reed.

Dr. Reed was not actually one of Courson's own doctors, having examined him at the defendants' request in connection with the lawsuit. On redirect examination Courson's attorney sought to make that fact clear. The following excerpt from the record shows what happened:

> Q. Now you mentioned being examined by Dr. Reed.
>
> A. Yes.
>
> Q. At whose instance—why did you go see Dr. Reed?
>
> A. Well, because the insurance company or someone—

MR. STREETMAN:

We object to that and we ask the Court to declare a mistrial. There is no insurance company here as a defendant, and we ask the Court for a mistrial.

THE COURT:

Overruled.

We perceive no reversible error. Plaintiff's counsel had a valid reason for wanting the jury to know that Dr. Reed was not Courson's own physician, for otherwise the jurors might have drawn an adverse inference from the plaintiff's failure to call Dr. Reed as a witness. Thus the question was put with apparent sincerity. When, as here, the reference to insurance occurs in good faith rather than in a deliberate attempt to prejudice the jury, an admonition by the court is ordinarily sufficient to correct the error. *Ragon* v. *Day,* 228 Ark. 215, 306 S.W. 2d 687 (1957); *Adams* v. *Summers,* 222 Ark. 924, 263 S.W. 2d 711 (1954); *Beatty* v. *Pilcher,* 218 Ark. 152, 235 S.W. 2d 40 (1950). No doubt

the court would have admonished the jury in this instance, but the defendants did not request that corrective measure. Instead, they asked only for a mistrial, to which they were not entitled.

II. Counsel for the plaintiff, in developing the proof of damages, called witnesses to show that two large companies in the vicinity had a policy against employing anyone with a history of back trouble (with which Courson was afflicted as a result of the collision). When it was brought out that the first company's policy was a written policy, defense counsel objected to the witness' testimony on the ground that the writing, which the witness did not have with him, would be the best evidence. It is now insisted that the objection should have been sustained.

The court was right. The best evidence rule comes into play when the contents of a writing or its exact wording is an issue in the case. When, as in the case at bar, the existence of the writing is merely a collateral matter, the rule does not apply. *St. Louis & S.F. R.R.* v. *Kilpatrick,* 67 Ark. 47, 54 S.W. 971 (1899). Moreover, as McKelvey points out: "There is a distinction between proving a fact which has been put in writing and proving the writing itself. Because a fact has been described in writing does not exclude other proof of the fact." McKelvey, Evidence, §345 (1944). Here the company's policy, which might have been an oral directive, was the fact to be proved. That the policy had been reduced to writing certainly did not exclude other proof of the basic fact.

III. Near the beginning of his closing argument Courson's attorney said to the jury: "I think I would like to caution you and possibly use at this time—one of the purposes of a jury—the golden rule of do unto others as you would have them do unto you." Defense counsel at once objected and asked for a mistrial. The court refused to declare a mistrial but did instruct the

jury to disregard the statement of counsel. (We do not agree with the appellants' insistence that the record shows that the "golden rule" argument was renewed even after the courts ruling.)

We find no error. It is true, as pointed out in *Russell v. Chicago, R.I. & P. R.R.,* 249 Iowa 664, 86 N.W. 2d 843 (1957), and in the annotation to that case in 70 A.L.R. 2d 927, that it is improper for a plaintiff's attorney to urge the jury to apply the golden rule by putting itself in the plaintiff's position and awarding whatever amount the jurors would like to receive themselves for a similar injury. Here, however, counsel never reached the point of actual prejudice, because his argument was interrupted at the first reference to the golden rule, without its implications having been developed in an improper way. In the circumstances the court's prompt admonition to the jury was sufficient, the error not being so serious as to call for a mistrial.

IV. After the verdict was received, the defendants' lawyer went into the jury room and found a piece of paper on which 12 numbers totaling $649,400 had been added up and divided by 12, giving a quotient of $54,-110. It is now insisted that the verdict for $55,000 was demonstrably a quotient verdict that should be set aside under our ruling in *Williams v. State,* 66 Ark. 264, 50 S.W. 517 (1899). Counsel concede, however, that our more recent cases, such as *Arkansas State Highway Commn. v. Vandiver,* 240 Ark. 26, 397 S.W. 2d 802 (1966), uphold quotient verdicts as being distinguishable from verdicts obtained by lot. We are urged to overrule the *Vandiver* case and its predecessors to the same effect, but we decline to do so. In our judgment they correctly state the law.

V. We cannot say that the verdict is so excessive as to indicate passion or prejudice or to shock the conscience of this court. Courson suffered a severe back injury. He was in traction in hospitals for 18 or 19

days and later was in a hospital for another three days while undergoing a painful myelogram. His past and future medical bills, plus the damage to his car, exceed $3,000.

The pain resulting from the injury has been extensive and severe and will continue to be so in the future. During more than nine months between the accident and the trial Courson was almost constantly in pain. He was unable to sleep for more than three hours at a time, often being compelled to get up and walk around the house or lie down in front of the fireplace with his back to the heat. He must wear a back brace that adds materially to his discomfort. The pain will continue in the future with little likelihood that it can be relieved by surgery, which Courson is unwilling to submit to.

Courson was 44 at the time of his injury, with an expectancy of 28 years. He was employed by the Game and Fish Commission as a game warden, in an outdoor job involving much driving, hiking, and other strenuous activity. He had not served long enough to have accumulated retirement benefits.

Courson's injury resulted in a disability of 20% to his body as a whole. Although he was still employed at the time of the trial, he was not able to perform all his duties and will be in constant jeopardy of losing his job. He is not trained for anything except outdoor work involving strenuous exertion. Should he lose his present position there is much doubt about his ability to find other comparable employment. We have already mentioned the policy that some employers are shown to have against the employment of persons with a history of back injuries.

We think, without detailing all the facts in the record that bear upon the amount of the verdict, that we may conclude the discussion by observing that we are

unanimous in the belief that the award is not demonstrably excessive.

Affirmed.

HARRIS, C.J., and BYRD, J., dissent as to Point I.