SYNERGY GAS CORPORATION *v.* Ida LINDSEY

92-598                                    843 S.W.2d 825

Supreme Court of Arkansas
Opinion delivered December 7, 1992

*Rieves & Mayton*, by: *William J. Stanley*, for appellant.

*Butler Hickey & Long*, by: *Phil Hickey*; and *Killough, Ford & Hunter*, by: *Robert M. Ford*, for appellee.

ROBERT L. BROWN, Justice. The appellant, Synergy Gas Corporation, argues for reversal on the basis that a reference to Synergy's liability insurance elicited from a Synergy employee by appellee Ida Lindsey's counsel was prejudicial error. We believe that the reference to insurance was prejudicial, and we reverse

and remand for a new trial.

On August 28, 1989, the appellee, Ida Lindsey, age 76, reported to Synergy employees that she smelled gas in her house, which was located west of Caldwell. That afternoon, two employees, Danny Shackleford and James Goings, were sent to her house from Forrest City to investigate. Shackleford tightened a valve, which slowed the leak. He did not go inside the house to determine whether the water heater or floor furnace pilot light were on. Nor did he advise Mrs.Lindsey to spend the night elsewhere due to potential danger.

The following morning, August 29, Shackleford accompanied by Bob Lee, Synergy's Forrest City branch manager, returned to the Lindsey home to remove gas from an unused underground butane tank. The men did not remember notifying Mrs. Lindsey of their presence. They also failed to crawl under the house to determine conditions or otherwise to ascertain whether her pilot lights were on. They did not request that she leave the house or turn off her appliances. Instead, both testified that they went directly to work on "bleeding" the tank. Lee later testified, "I had one thing on my mind and that was getting that gas out."

Lee attached 150 feet of hose to the tank and began releasing the butane in a field to the northeast of the appellee's house. After the gas had been drained, the men removed the percentage gauge from the tank. Lee then left, and Shackleford, who was certified only to transport and deliver propane and butane gas, continued the work. He poured some dishwashing detergent into the tank to "kill the vapors," and after that, he began to fill the tank with water. At that point, gas fumes started to escape, accompanied by what Shackleford described as a "roaring" or "whistling-like noise." Detecting the odor of Mercap in the tank, Shackleford cut off the water. Shackleford turned the water on again but cut it off when the noise resumed and the odor resumed. He did not, however, warn Mrs. Lindsey. Concerned, he called the branch office and spoke with Lee, who told him "not to worry about it."

After this conversation, Shackleford heard what he described as a "crackling noise" and saw a flame run out from a vent beneath the house. He was suddenly knocked back 15 to 25 feet by an explosion. He immediately contacted his office by radio,

requesting it to alert the fire department. Shackleford next went to the front door of the house and found Mrs. Lindsey, who had come to the door in response to his efforts to break it down.

Mrs. Lindsey, testimony later revealed, was thrown from her chair by the same explosion and landed on the floor. As Shackleford attempted to get her away from the house, she insisted on retrieving her purse. Shackleford went back into the burning house and got the purse. Mrs. Lindsey filed suit against Synergy and sought damages for medical expenses, mental anguish (past and future), and property damage. In addition, she asked for punitive damages. The case was tried before a jury over two days. Synergy admitted liability for the occurrence but contested compensatory damages and denied liability for mental anguish or punitive damages. The jury returned verdicts in favor of Mrs. Lindsey in the amounts $36,436.46 for compensatory damages, $20,100 for mental anguish, and $120,000 for punitive damages.

Synergy first contends that Mrs. Lindsey's counsel questioned Bob Lee, who was one of the last witnesses, in such a way as to elicit prejudicial testimony of Synergy's liability coverage. At deposition, Lee had responded to counsel's questions about assurances he had given Mrs. Lindsey's son, Bee Lindsey, about Synergy's willingness to cover the loss with the following:

> I told Bee. I said you've got nothing to worry about. They have insurance. It will be covered. That is what John Neal told me. He said she ain't got nothing to worry about. I told you what my supervisor told me.

At trial, counsel for Mrs. Lindsey called Lee as a hostile witness and challenged him on various points that were inconsistent with statements he had made in his deposition. At one point, the trial court ruled that appellee's counsel stay behind the podium and let Lee finish answering the questions after Synergy's attorney objected to the fact that counsel was badgering the witness. The following exchange occurred later in the cross-examination:

> Q. What did you tell [Bee] about it? Did you tell him you had talked with your supervisor in West Memphis?
>
> A. I told him I had called him.
>
> Q. And what did you tell [Bee]?

A. I told him that I called him and he would be out there and I guess that's it.

Q. You know what I mean. What did you tell [Bee] about the situation?

A. Well I told him the company had insurance and I was sure he didn't have anything to worry about. That it would take care of it.

Q. You told him that you spoke to your supervisor, and he said tell Mrs. Lindsey she didn't have to worry about a thing. That they would take care of everything, didn't you?

A. That's right. That's what I was told.

Testimony continued on measures that Lee ordered to be taken after the explosion to determine whether there were any broken lines or loose connections under the house and efforts to assist Mrs. Lindsey. When Mrs. Lindsey's counsel asked Lee whether Synergy continued to send her a bill, Synergy's counsel objected, and the trial court summoned all attorneys to the bench. At that time Synergy moved for a mistrial on grounds that Mrs. Lindsey's counsel had elicited a response regarding insurance coverage. Mrs. Lindsey's counsel denied that he had elicited the response and stated that the insurance had not been mentioned at Lee's deposition: "In his deposition he said tell Mrs. Lindsey that my people said we would take care of everything. I wasn't soliciting insurance. *Insurance was never mentioned to me*, and I wasn't soliciting that. Mr. Rieves knows that is what the deposition said." (Emphasis ours.) Mrs. Lindsey's counsel was not correct in light of the deposition testimony previously quoted in this opinion, which meant the trial court at this stage was misinformed. Insurance was specifically mentioned at the deposition.

The circuit court then denied the motion because he did not believe the questioning was purposeful. At the end of all testimony, Synergy's counsel renewed the motion for mistrial and pointed out to the trial court that Bob Lee had mentioned liability insurance in his deposition in connection with Mrs. Lindsey's not having anything to worry about. The trial court refused to change his ruling.

■ As a general rule, it is improper for either party to introduce or elicit evidence of the other party's insurance coverage. *Younts v. Baldor Electric Co.*, 310 Ark. 86, 832 S.W.2d 832 (1992). The injection of insurance coverage is proper only when it is relevant to some issue in the case. *Peters v. Pierce*, 308 Ark. 60, 823 S.W.2d 820 (1992). The crux of the matter, then, is whether the question that prompts a reference to insurance is "relevant to an issue or is designed to skew the jury's thinking because of the presence or absence of a deep pocket." *Hacker v. Hall*, 296 Ark. 571, 576, 759 S.W.2d 32, 35 (1988); *see also Bull Shoals Community Hospital v. Partee*, 310 Ark. 98, 832 S.W.2d 829 (1991).

We have held that where there has been an intentional and deliberate reference to insurance when it was not an issue in the case and when the opposing party had not opened the door for its admission, mistrial was the proper remedy. *Vermillion v. Peterson*, 275 Ark. 367, 630 S.W.2d 30(1982). In that case, the attorney for one of the defendants, in closing argument, argued that the plaintiff's carrier had already paid her medical bills. The trial court refused to declare a mistrial, and we reversed on the basis that the insurance comment was intentional, irrelevant, uninvited, and prejudicial. *See also Pickard v. Stewart*, 253 Ark. 1063, 491 S.W.2d 46 (1973).

In *Hacker v. Hall, supra*, we reversed a jury verdict because of the injection of insurance into the case. There, defense counsel was questioning the plaintiff about why he had employed a lawyer so fast. The plaintiff answered: "Because the insurance company kept harassing me." Defense counsel pursued the point:

Defense Counsel: Which one?

Plaintiff: State Farm.

Defense Counsel: The one from State Farm or the one with Burnham:

Plaintiff: No, State Farm.

Burnham Ford was the plaintiff's employer. We concluded in *Hackler* that the reference to Burnham Ford's insurance by the defense counsel was misconduct and was one reason for granting a new trial.

On the other hand, we have also held that where the attorney poses a question with apparent sincerity and in good faith rather than in a deliberate attempt to prejudice the jury and the witness answers with a reference to insurance, an admonition by the court is ordinarily sufficient to correct the error. *Lin Manufacturing Company of Arkansas, Inc.* v. *Courson,* 246 Ark. 5, 436 S.W.2d 472 (1969).

Here, the facts are somewhat different, and they present an issue we have not considered before. The trial was solely about damages, liability having been admitted by Synergy. Mrs. Lindsey's counsel had called Bob Lee as a hostile witness and had used his deposition twice for impeachment purposes before the colloquy at issue. Her counsel knew or should have known that in response to an almost identical question at deposition, Bob Lee said: "They have insurance. It will be covered." Nevertheless, counsel forged ahead aggressively, using that deposition to impeach Lee and forcing the issue of precisely what had Lee told Mrs. Lindsey's son. Lee had been told by Synergy's attorney not to mention insurance. But counsel for the other side clearly pushed Lee into a corner.

We cannot say with absolute certainty that the appellee's counsel intentionally elicited the information about Synergy's insurance coverage. We are certain, however, that counsel trod recklessly onto dangerous ground and should have known, based on the deposition he took, the response that he would get from Lee when he pressed him for an answer. Moreover, Mrs. Lindsey's counsel incorrectly advised the trial court when the mistrial was first under discussion by stating that insurance was not mentioned in Lee's deposition.

We are mindful of the appellee's contention that Synergy is a major company with considerable assets and that this fact was brought to the jury's attention in connection with the claim for punitive damages. Nonetheless, it would place us in an untenable position to premise a decision of prejudice on the extent of the insured's means. Irrespective of a company's assets, the mention of insurance would have a profound effect on any jury. It suggests, among other things, that a third party would foot part, if not all, of the bill — especially here when the witness added that the insurance would "take care of it." That statement in itself was

misleading because liability coverage typically does not cover intentional acts leading to punitive damages.

■ At that point, the metaphorcal bell had rung, and the prejudice was pronounced. While each and every mention of insurance at trial may not constitute reversible error, under the circumstances of this case where appellee's counsel proceeded recklessly in eliciting an irrelevant response on liability coverage, the trial court erred in refusing to grant a mistrial. We note again in so holding that the trial court was misinformed about the reference to insurance in Lee's deposition when it first denied the motion for mistrial.

Reversed and remanded.

HAYS, J., concurs.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting. I respectfully disagree with the court's decision to reverse by holding that Ms. Lindsey's counsel improperly injected insurance through his cross-examination of Synergy's branch manager, Bob Lee. The majority opinion sets forth Lee's relevant deposition testimony and trial court testimony, and it is undisputed that, soon after the Lindsey house was damaged, Lee told Ms. Lindsey's son, Bee, "he had nothing to worry about, it (the damage) would be covered." True, Lee mentioned insurance at his deposition, but Synergy's attorney informed Lee not to mention insurance at the court trial. Contrary to his attorney's admonition, he mentioned insurance nonetheless. In fact, he did so, in my view, in answer to a very legitimate and relevant question posed by Lindsey's counsel.

Obviously, Lindsey's counsel wanted Lee to tell the jury that Synergy (per Lee) had told Ms. Lindsey and her son that Synergy would take care of her loss. By such a remark, Lee implied Synergy was liable for Lindsey's entire loss. Lee could have conceded that point without mentioning insurance. Lindsey clearly had every right to have the foregoing admission against interest declared before the jury even though she might not be entitled to Lee's earlier reference to insurance. Lee volunteered the reference to insurance anyway. When the reference to insurance occurs in good faith rather than in a deliberate attempt to prejudice the jury, an admonition by the court is ordinarily

sufficient to correct the error. *Lin Mfg. Co. of Arkansas* v. *Courson*, 246 Ark. 5, 436 S.W.2d 472 (1969).

Here, Synergy requested no cautionary instruction, but instead requested only a mistrial which the court denied. In my view, the trial court did not abuse its discretion since the record reflects Lindsey's counsel questioned Lee in good faith, and because Synergy — through Lee — assured Lindsey that Synergy would take care of her loss. With such assurances having been made known to the jury, Synergy would have suffered little prejudice if it had asked the trial court to inform the jurors that insurance was not relevant and to admonish them not to consider any reference to insurance in their deliberations.

For the above reasons, I would affirm.