2014 Ark. App. 599

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
**No.** CV-14-515

| | |
|---|---|
| LASHONDA GOODWIN<br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILD<br><br>APPELLEES | **Opinion Delivered** October 29, 2014<br><br>APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT<br>[NO. JV-2013-203]<br><br>HONORABLE RALPH WILSON, JR., JUDGE<br><br>AFFIRMED |

## RHONDA K. WOOD, Judge

The circuit court adjudicated Lashonda Goodwin's child dependent-neglected. Goodwin appeals from the court's adjudication order. Because the court's findings are not clearly against the preponderance of the evidence, we affirm the adjudication order.

Goodwin, 23-years old, gave birth to M.G. in November 2013. The Department of Human Services (DHS) exercised a hold on M.G. after Goodwin reported to hospital staff that she had lost custody of her other children, had a history of depression, had not taken her medication, and had unstable living arrangements. At the adjudication hearing, Goodwin testified to the following facts: (1) she had four other children besides M.G. but did not have custody of any of them; (2) the State of Ohio had terminated her rights to at least one of the children, Ma.G., after he was born weighing one pound, seven ounces; (3) another child, X.G., was taken by the State of Arkansas, then returned, only for Ohio to

"come and get [sic] him"; (4) the longest she had custody of any of her children was seven months; (5) she had a six-year-old daughter living with an "Auntie," but she had not had contact with her in over a year because "Auntie" changed the phone number; (6) two weeks before the hearing, she had moved in with her stepbrother and his wife in a two-bedroom apartment; and (7) she was not employed, and food stamps were her only source of income.

DHS's family-service worker testified that she had not visited Goodwin's new apartment because Goodwin had just moved in right before the hearing. The worker also testified that no home study had been conducted on the father, Michael Lewis, because he had just been released from jail and was awaiting a court date on a revocation charge;[1] thus, he could not pass a home study. In her defense, Goodwin testified that she would be able to keep and care for M.G., unlike her other children, because she had a support network in Arkansas consisting of her stepbrother, her stepbrother's wife, and M.G.'s father.

The court adjudicated M.G. dependent-neglected based on Goodwin's admission that she had lost custody of her other children, her diagnosis for depression, and her unstable housing and income.

In dependency-neglect cases, the standard of review on appeal is de novo, but we do not reverse the court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Moiser v. Ark. Dep't of Human Servs.*, 95 Ark. App. 32, 233 S.W.3d 172 (2006). A finding is clearly erroneous when, although there is evidence to

---

[1] This was for violating probation on a residential-burglary charge.

support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Eason v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 507, 423 S.W.3d 138.

At a dependency-neglect adjudication hearing, DHS has to prove the allegations in the petition by the preponderance of the evidence. Ark. Code Ann. §§ 9-27-325(h)(2)(B); 9-27-327(a)(1) (Supp. 2013). A dependent-neglected juvenile is one "who is at substantial risk of serious harm as a result of the following acts or omissions to the juvenile, a sibling, or another juvenile: (i) abandonment; (ii) abuse; (iii) sexual abuse; (iv) sexual exploitation; (v) neglect; (vi) parental unfitness; or (vii) being present in a dwelling or structure during the manufacturing of methamphetamine with the knowledge of his or her parent, guardian, or custodian." Ark. Code Ann. § 9-27-303(18)(A). Neglect is defined in the Juvenile Code and can mean, among other things, an act or omission by the parent that constitutes a "failure to take reasonable action to protect the juvenile from . . . parental unfitness when the existence of this condition was known or should have been known." Ark. Code Ann. § 9-27-303(36)(A)(iii). "The statutory definition of a neglected child does not require proof of actual harm or impairment having been experienced by the child. The term 'substantial risk' speaks in terms of future harm." *Maynard v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 82, at 7, 389 S.W.3d 627, 630. At an adjudication hearing, the focus is on the child, not the parent. *Seago v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 767, 360 S.W.3d 733.

Here, the court adjudicated M.G. dependent-neglected because Goodwin's rights to another child had been terminated and because of Goodwin's unstable housing and

income.[2] Goodwin argues that these findings are clearly against the preponderance of the evidence. First, Goodwin argues that DHS offered no evidence that her other children, M.G.'s siblings, were ever subjected to a substantial risk of serious harm. Second, she argues that she had stable housing because she was living with her stepbrother; she also points out that she was receiving assistance in the form of food stamps

Goodwin's arguments lack merit.  For one thing, Goodwin admitted at the adjudication hearing that her parental rights to at least one of her children had been terminated by the State of Ohio. Her attorney argued at the hearing, and also argues on appeal, that DHS should have proved this fact with written documentation and, citing Arkansas Rule of Evidence 901 (2013), maintains that Goodwin's testimony is not the best evidence of her history in other child-welfare cases. This argument is misplaced for two reasons. First, Rule 901 concerns authentication and identification of evidence; it has nothing to do with the best-evidence rule, which resides in Rule 1002. Second, the best-evidence rule applies only when a party tries to prove the content of a writing.[3] But here, DHS was trying to establish the existence of a past fact—that is, that Goodwin's rights to another child had been terminated. Of course, a document or writing from an Ohio court could have demonstrated this fact. But there is no rule that prohibits Goodwin's own

---

[2] The court was also concerned with Goodwin's diagnosis for depression. But there was no evidence that this diagnosis inhibited her parental abilities or could otherwise cause future harm to M.G.

[3] "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provide by these rules or by [rules adopted by the Supreme Court of this state or by] statute." Ark. R. Evid. 1002.

testimony from demonstrating this fact too.[4] Indeed, Goodwin can testify to any fact within her personal knowledge. Ark. R. Evid. 602. And the question whether her rights to any of her children had been terminated surely resides within her personal experience.

Summing up this point: Goodwin's admission that her rights to one of her children had been terminated, that other states had taken another child into custody, and that she did not have custody of any of her children is sufficient to show by a preponderance of the evidence that M.G. is at substantial risk of serious harm because of neglect or parental unfitness.

In addition to Goodwin's admitted history of parental unfitness, the court found by a preponderance of the evidence that Goodwin had unstable housing. Supporting this was Goodwin's testimony about living in Arkansas, then Ohio, and now living back in Arkansas. Goodwin also testified that she had moved again two weeks before the hearing. Her current living arrangement, where she is staying with her stepbrother, supports the court's finding that Goodwin tends to be incapable of living on her own and supporting herself. The court also had a sufficient basis to find that her income was unstable based on her testimony that she did not have a job and that her sole source of income was food stamps.

---

[4] *See, e.g.*, *Lin Mfg. Co. of Ark. v. Courson*, 246 Ark. 5, 8, 436 S.W.2d 472, 474 (1969) ("There is a distinction between proving a fact which has been put in writing and proving the writing itself. Because a fact has been described in writing does not exclude other proof of the fact.").

All in all, the circuit court was faced with a mother who does not have custody of her other four children. At least one loss of custody resulted from termination. In order to prevent the next child, M.G., from suffering serious harm, the court made the decision to adjudicate the child dependent-neglected. As stated previously, the focus is on the child and the potential harm to that child. *Seago*, *supra*. This is not to say that once a parent's rights to a child have been terminated, the rest of her children are automatically dependent-neglected. Rather, based on these particular facts, the court's dependency-neglect ruling is not clearly against the preponderance of the evidence after considering Goodwin's history of parental unfitness, unstable housing, and her current inability to support herself. A dependency-neglect case will give Goodwin an opportunity, under supervision, to demonstrate whether she has changed and can potentially raise M.G. in the future.[5]

Based on this record, we hold that the court's dependency-neglect finding is not clearly against the preponderance of the evidence and affirm the adjudication order.

Affirmed.

GLADWIN, C.J., and HARRISON, WYNNE, and GLOVER, JJ., agree.

BROWN, J., dissents.
*Dusti Standridge*, for appellant.
*Tabitha Baertels McNulty,* Office of Policy & Legal Services, for appellee.
*Chrestman Group, PLLC*, by: Keith Chrestman, attorney ad litem for minor child.

---

[5] We are hopeful that during the pendency of this case, DHS will display better preparedness than it displayed at this hearing. It would have been helpful to the trial court and our court on appeal had DHS sought and obtained the records concerning the mother's past interactions with the states of Arkansas, Ohio, and Michigan regarding her other children.

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
No. CV–14–515

| | |
|---|---|
| LASHONDA GOODWIN<br><div align="right">APPELLANT</div><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES and<br>MINOR CHILD<br><br><div align="right">APPELLEES</div> | **Opinion Delivered:** October 29, 2014<br><br>APPEAL FROM THE CRITTENDEN<br>COUNTY CIRCUIT COURT<br>[NO. JV-2013-203]<br><br>HONORABLE RALPH WILSON, JR.,<br>JUDGE<br><br>DISSENTING OPINION |

**WAYMOND M. BROWN, Judge**

The majority has affirmed a trial court order based on unsubstantiated inferences drawn from Ms. Goodwin's own testimony, an ignorance of the statutory definition of "neglect," and improper and inappropriate reliance on *Brewer*.[1] I am left with a definite and firm conviction that a mistake has been committed. Accordingly, I dissent.

A parent's interest in the companionship, care, custody, and management of her child rises to the level of a constitutionally secured right, and the State registers no gains toward its stated goals of protecting children when it separates a fit parent from the custody of her children.[2] Adjudication hearings are held to determine whether the

---

[1] *Brewer v. Ark. Dep't of Human Servs.*, 71 Ark. App. 364, 43 S.W.3d 196 (2001).

[2] *Stanley v. Illinois*, 405 U.S. 645 (1972).

allegations in a petition are substantiated by the proof.[3] The State bears the burden of establishing dependency-neglect by a preponderance of the evidence.[4]

Here, although the trial court based its order on such inferences, the Department presented no evidence of Ms. Goodwin's prior history with either its services or similar services from other states. No evidence was presented to substantiate the cause for removal of any of the children except through Ms. Goodwin's own testimony, in which she stated that one child was removed at birth because he was severely premature and she would not have been able to support his medical needs. The record also demonstrates that the Department never visited the family home, despite citing Ms. Goodwin's lack of stable housing as a basis for the adjudication.

In the case before us we are presented with a young mother with no legal training who is facing the State of Arkansas. In her attempt to be forthright with hospital staff, she disclosed that she previously had children but she was no longer the custodial mother of those children. Rather than simply accessing the records in regard to these older siblings, so as to support grounds for whether or not her newborn should be adjudicated dependent-neglected, the Department instead set the stage for the inference that Ms. Goodwin was not a fit mother because she did not exercise custody over her other children. Affirming such a practice sets a dangerous precedent whereby the Department can put families on the fast-track to parental termination without doing the homework that the taxpayers pay them to do.

---

[3] Ark. Code Ann. § 9-27-327(a)(1) (Supp. 2011).

[4] Ark. Code Ann. § 9-27-325(h).

2

In addition to failing to retrieve documentation evidencing the cause of non-custody of Ms. Goodwin's older children, the circuit court seems to have overlooked our statutory definition of "neglect." The circuit court based the adjudication on Ms. Goodwin's instability of housing and income. "Neglect" means those acts or omissions of a parent that constitute failure or refusal to provide the necessary food, clothing, etc., for the juvenile's well-being, except when the failure "is caused primarily by the financial inability of the person legally responsible and no services for relief have been offered."[5] This plain language reading of this statutory definition states a two-part test that, when met, excludes the act or omission from constituting neglect. Ms. Goodwin's situation meets this test. First, any argument that the Department can make for neglect would have to be a result of financial inability. Second, nothing in the record indicates that any services were offered to Ms. Goodwin to help her financially or with her housing. According to our law, these services should have been offered before the adjudication.

Perhaps the most troubling aspect of the circuit court's adjudication is its strong reliance on *Brewer*, a fact the majority chooses to ignore. The Department and the circuit court used this case to stand for the proposition that a child may be removed from a parent if that child's older siblings suffered harm by the parent. While I understand this proposition and believe that it should hold a place in our law, *Brewer* is far too distinguishable for us to continue to allow lower courts to cite it as the authority for removing a child based solely on the fact that the child's older siblings had suffered *any* harm whatsoever. In *Brewer*, the nineteen month-old sibling of the child adjudicated

---

[5] Ark. Code Ann. § 9–27–303(36)(A)(ii).

dependent-neglected was airlifted to the hospital, where she was placed on a ventilator and in danger of death. She had a low blood count and a large hematoma on her back that was discovered to be caused by a direct blow. She had bruises at different stages on her body, including above the ears and around the eyes. She had rectal tears consistent with sexual abuse and bruising on her labia majora. Further tests at the hospital established brain hemorrhaging and a spinal fracture. We may be able to cite this case to be relied on in the future for the purpose of justifying removal when an older sibling of a child suffered substantial and direct harm or physical or sexual abuse, but it should not be allowed as precedent in the instant case where the record indicates that the Department made no effort to discover why Ms. Goodwin no longer had custody of her children and, at best, can only point to her potential indigence as "harm" that would be suffered by the child.

In summation, as my learned, seasoned, former circuit-judge colleague, writing for the majority today, has previously stated "Given the completely miniscule amount of evidence of dependency-neglect once we remove the inference of guilt, I find that the circuit court should take a second look at the case and determine if the court would still adjudicate."[6]

---

[6] *Bowie v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 279, at 8, 427 S.W.3d 728, 732 (Wood, J., dissenting).