Richard Leon BREWER *v.* STATE of Arkansas

CR 74-60                                 513 S.W. 2d 914

Opinion delivered September 30, 1974

*Guy Jones Jr.* and *Phil Stratton,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Dep. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant, charged

with second-degree murder in the shooting of his wife, was found guilty by the jury and was sentenced to imprisonment for ten years. For reversal he contends that the trial court should have directed a verdict in his favor and that the court was in error in its rulings upon the admissibility of certain evidence.

With respect to the directed verdict counsel for the appellant mistakenly assume that we may consider only the evidence that had been introduced when the State rested its case in chief. The appellant, however, did not stand upon the motion for a directed verdict which was made at that time. Instead, he introduced proof, including his own testimony, to establish his defense. By that procedure the original motion for a directed verdict was waived; the sufficiency of the evidence must be determined upon the entire record. *Crow* v. *State*, 248 Ark. 1051, 455 S.W. 2d 89 (1970).

There is ample proof to support the verdict. The jury had grounds for disbelieving Brewer's assertion that he accidentally shot his wife while cleaning his pistol. To begin with, there were admittedly two shots, which makes it unlikely that both were accidental, as Brewer testified. The State showed that, depending upon whether the gun was cocked, it took either 8 or 14 pounds of pressure to pull the trigger. The police arrived at the scene almost immediately, but they found no equipment for cleaning a gun. The decedent was shot at close range. Finally, there had been marital difficulties between the couple. Brewer had contracted a venereal disease three different times; in one instance he had infected his wife.

It is argued that the State's proof was incomplete, because Dr. Moser, who performed an autopsy and determined the cause of death, was unable to say that the body which he examined was that of Brewer's wife. Dr. Moser, however, took pictures of the body, the pictures being received in evidence. On cross-examination Brewer identified one of the pictures as that of his wife. Thus any defect in the State's proof was corrected later in the trial.

We cannot sustain the appellant's contention that the State failed to establish a continuous chain of possession with

respect to the cartridges that the police found at the Brewer home, where the homicide occurred. Officer Martin, who first took charge of Brewer's pistol, said that "it had four shells in it, and two had been shot." Brewer's argument assumes that the officer was referring to only four shells; but upon the testimony as a whole the jury could readily have found that the officer was talking about six shells. Indeed, his field notes made at the time refer specifically to six cartridges, and the testimony given by other witnesses in the chain of possession is to the same effect. When the testimony is considered in its entirety no gap in the chain is established.

It is insisted that one of the State's witnesses, Mrs. Garrison, was allowed to testify about the contents of an insurance policy in violation of the best evidence rule. The witness, who was the personnel manager at the plant where Mrs. Brewer had worked for a short time before her death, testified that under the company's insurance plan for its employees Mrs. Brewer had been insured for $4,000, plus double indemnity. It is now argued that the insurance policy should have been produced by the State.

We find no error. The best evidence rule does not apply strictly to collateral matters. *Lin Mfg. Co. of Ark.* v. *Courson,* 246 Ark. 5, 436 S.W. 2d 472 (1969). McCormick's treatise on Evidence, § 234 (2d ed., 1972), points out that some writing plays a part at nearly every turn in human affairs. It becomes impracticable to forbid any reference to a writing without its being produced in court. McCormick goes on to say that although the concept of collateralness defies precise definition, three principal factors should be considered. "These are: the centrality of the writing to the principal issues of the litigation; the complexity of the relevant features of the writing; and the existence of genuine dispute as to the contents of the writing." *Id.*

The appellant's present argument fails on all three points. The group insurance policy had a bearing only upon possible motive, not an essential element in the State's case. The face amount of an insurance policy is not such a complex matter that the writing itself must be examined before the amount can be determined with reasonable certainty. Finally, the record contains no indication that there was any

genuine dispute about the extent of the coverage. The objection was a purely technical one, which the trial court properly overruled.

We have considered the appellant's brief in its entirety and find no prejudicial error.

Affirmed.