Frankie LOPEZ, a minor, by and through his next friends and parents, Frank and Paula LOPEZ, Plaintiff–Appellant,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Garnishee–Appellee.

No. 05CA1361.

Colorado Court of Appeals,
Div. A.

Oct. 5, 2006.

William H. Remine, Littleton, Colorado, for Plaintiff–Appellant.

Harris, Karstaedt, Jamison & Powers, P.C., A. Peter Gregory, Englewood, Colorado, for Garnishee–Appellee.

Opinion by Chief Judge DAVIDSON.

In this garnishment proceeding, plaintiff, Frankie Lopez, appeals from the order dismissing the writ of garnishment filed against American Family Mutual Insurance Company, garnishee. We affirm.

The underlying action was initiated by plaintiff's filing of a complaint against Jaime Erivas and his father, Jorge Erivas–Saines (insured), who carries a homeowners policy with American Family. Seeking personal injury damages under various theories of negligence, plaintiff alleged that "Jaime Erivas retrieved a BB gun from his older brother's room, and proceeded to shoot Plaintiff [Frankie Lopez] five times in the head and back."

American Family refused insured's request to defend the lawsuit, determining, as relevant here, that the injury to Lopez was caused by an intentional act and, therefore, fell within the exclusions in the policy.

Insured did not file responsive pleadings, and after a damages hearing, the court entered a default judgment in favor of plaintiff in the principal amount of approximately $185,000. Seeking to collect on the judgment, plaintiff filed a writ of garnishment against American Family.

American Family denied the writ based on the intentional act provision in insured's policy; which excluded liability coverage for "bodily injury or property damage caused intentionally by or at the direction of any insured even if the actual bodily injury or property damage is different than that which was expected or intended from the standpoint of the insured." Plaintiff traversed the denial.

Following briefing, the court dismissed the writ. Reasoning that "five separate shots that all hit the target do not support a claim of accidental discharge," the trial court concluded that American Family held no monies owed to the insured because, as a matter of law, the factual allegations of the complaint fell within the intentional act exclusion of the policy.

On appeal, plaintiff contends that this was error. Specifically, plaintiff argues that the facial allegations of his complaint could support a claim of negligence and, therefore, were not necessarily excluded from the policy's coverage. Accordingly, plaintiff asserts, American Family was obligated to defend the action and by its refusal to do so was obligated to plaintiff for the amount of the judgment against insured. We disagree.

■ An insurer's duty to defend arises when a complaint against its insured includes factual allegations that, if sustained, would impose a liability on the insured that is covered by the policy. The allegations in the complaint, together with the insurance policy, are the sole bases for determining whether a duty to defend exists. *See Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991).

■ Thus, to defeat the duty to defend, an insurer must establish that the factual allegations provide no basis from which the insurer could be held liable for indemnifying the insured under the policy. *See Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 829 (Colo.2004). The duty to defend is designed to cast a wide net in favor of coverage. *See Thompson v. Md. Cas. Co.*, 84 P.3d 496, 502 (Colo.2004). However, an insurer has no duty to defend if the claims asserted in the complaint are clearly excluded from coverage. *See, e.g., Horace Mann Ins. Co. v. Peters*, 948 P.2d 80, 85 (Colo.App.1997).

■ The intentional act exclusion, such as the provision at issue here, applies "whenever some injury is intended, even though the injury that actually results differs in character or degree from the injury actually intended." *See Am. Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 955 (Colo.1991); *see also*

*Butler v. Behaeghe*, 37 Colo.App. 282, 548 P.2d 934 (1976).

■ Plaintiff argues that, contrary to the trial court's conclusion, the intentional act exclusion did not relieve American Family of its duty to defend because it cannot be determined from the face of the complaint whether the acts alleged were intended to cause injury or were merely negligent. We are not persuaded.

Generally, it may be inferred that when an individual deliberately aims a loaded BB gun at someone and pulls the trigger, the shooter intends or expects to cause some harm. *See People in Interest of J.R.*, 867 P.2d 125, 127 (Colo.App.1993) (BB gun can be a deadly weapon); *Bookout v. Victor Comptometer Corp.*, 40 Colo.App. 417, 419, 576 P.2d 197, 198 (1978) ("the potential for danger inherent in a BB gun is readily apparent"); *Am. Family Mut. Ins. Co. v. Wubbena*, 496 N.W.2d 783, 785 (Iowa Ct.App.1992) (concluding as a matter of law that "when a person shoots a bb gun at another, there is the intent to cause bodily injury"); *Bell v. Tilton*, 234 Kan. 461, 471, 674 P.2d 468, 477 (1983) ("the act of shooting another in the face with a BB pellet is one which is recognized as an act so certain to cause a particular kind of harm it can be said an actor who performed the act intended the resulting harm").

However, plaintiff asserts that regardless of the danger of BB guns or the likelihood of injury, the shooter's intent to harm cannot be assumed if the shooting was accidental. And, he argues, nothing on the face of the complaint here is determinative of whether "shooting [Frankie Lopez] five times in the head and back" was intentional or anything more than "horseplay by a teenage boy who was not intending to injure his friend." We disagree.

To the contrary, intent to injure can be inferred from the repetition of an act that a person knows will cause injury or harm. *See, e.g., Liggett v. People*, 135 P.3d 725, 734 (Colo.2006) (intent inferred from defendant's awareness); *see also People v. Fisher*, 759 P.2d 33, 39 (Colo.1988) (defendant's awareness of the probable result of his actions can be deduced from his conduct and surround-

ing circumstances); *cf. Allstate Ins. Co. v. Steinemer*, 723 F.2d 873 (11th Cir.1984)(discussing, in context of determining whether firing BB gun at the victim a second time indicated intent to harm, the effect of the shooter's awareness that pumping the gun three times before firing it the first time had resulted in injury to the victim).

Thus, although plaintiff is correct that pulling the trigger of a BB gun might be accidental once, *see, e.g., Kohl v. Union Ins. Co.*, 731 P.2d 134, 135 (Colo.1986) (hunter's discharge of rifle when removing if from gun rack was accidental), or perhaps even twice, *see Brewer v. State*, 257 Ark. 51, 52, 513 S.W.2d 914, 915 (1974) (unlikely that injuries from two shots are accidental, but not impossible), the third time, or more, "pretty clearly elevates the activity to an intentional tort." *W. Am. Ins. Co. v. Maestas*, 631 F.Supp. 1565, 1566 (D.Colo.1986)(three bites inflicted during a fight "do not a negligence case make").

Plaintiff suggests that even if intent to injure may normally be assumed when the shooter fires and hits his target five times, here Erivas might have used a "semi-automatic-type BB gun" that can fire five shots in mere seconds, an insufficient time, according to plaintiff, for Erivas to have become aware of his actions or their consequences. However, nothing in the complaint indicated that a specialized type of BB was gun used, and we may not read hypothetical facts into the pleadings. *See Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) ("to determine whether a duty to defend exists, courts must look no further than the four corners of underlying complaint"); *see also Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex.1997) (court will not imagine factual scenarios that could trigger coverage).

Moreover, we note, semi-automatic weapons—in contrast to fully automatic weapons—can fire only one shot per trigger pull. *See Robertson v. City & County of Denver*, 874 P.2d 325, 333 n. 16 (Colo.1994)(defining automatic and semiautomatic weapons). The

shooter still would have to aim at the same target and pull the trigger five separate times in order to hit the victim with five pellets. Hence, even if we were to assume that there is such a weapon and hypothesize that Erivas used it here, it would not alter our conclusion.

Based on this disposition, we need not address plaintiff's remaining arguments or the contentions raised by American Family in defense of the order.

The order is affirmed.

Judge KAPELKE * and Judge NIETO * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2006.