2009 Ark. 256

**Doris NELSON, Appellant,**

v.

**William Scott STUBBLEFIELD, M.D., St. Bernards Medical Center, and Medical Assurance Company, Inc., Appellees.**

No. 08–649.

Supreme Court of Arkansas.

May 7, 2009.

Rehearing Denied June 25, 2009.

Fogleman & Rogers, by: Joe M. Rogers, West Memphis, for appellant.

Barrett & Deacon, P.A., by: Paul D. Waddell and Brandon J. Harrison, Jonesboro, for appellees St. Bernards Medical Center and Medical Assurance Company, Inc.

Womack, Landis, Phelps & McNeill, P.A., by: Paul McNeill and Dustin H. Jones, Jonesboro, for appellee William Scott Stubblefield, M.D.

ROBERT L. BROWN, Justice.

Appellant Doris Nelson appeals from a judgment in favor of appellees, William Scott Stubblefield M.D., and St. Bernards Regional Medical Center ("St. Bernards"), following a jury trial and a December 4, 2007 order denying her motion for a new trial. She asserts four points on appeal for reversal. We affirm the judgment.

On January 9, 2006, Nelson filed a complaint against Dr. Stubblefield and St. Bernards, alleging that Dr. Stubblefield and the St. Bernards nursing staff were medically negligent in connection with a fall she sustained while a patient at St. Bernards on May 21, 2004. St. Bernards answered and pled that it was a nonprofit entity insured by the Medical Assurance Company, Inc. ("Medical Assurance"). Following this, Nelson filed an amended complaint and named Medical Assurance as an additional party defendant under the direct-

action statute, Arkansas Code Annotated § 23–79–210.[1]

After a four-day trial, a jury found, in separate verdicts, that a preponderance of the evidence had not shown that there was medical negligence on the part of Dr. Stubblefield or the St. Bernards nursing staff that had been a proximate cause of any of Nelson's damages. As a result, the circuit judge entered judgment in favor of the appellees on October 2, 2007. Nelson moved for a new trial, which the circuit judge denied on December 4, 2007.

## I. *Proffered Jury Instruction*

 For her first point on appeal, Nelson asserts that the circuit judge erred by denying her proffered jury instruction that would have allowed the jury to consider the testimony of her physician expert, Dr. Floyd Schrader, and evidence of professional protocols and procedures in determining the standard of care for the St. Bernards nursing staff.

The facts leading up to the proffered instruction are these. At trial, Nelson introduced testimony from two expert witnesses, Dr. Schrader, a family medical specialist, and Thurstle Mullen, a registered nurse. Nelson also introduced various nursing protocols and procedures from St. Bernards concerning proper nursing standards. Dr. Schrader testified that he was familiar with the degree of skill and learning possessed by registered |₃nurses and that, "based on his experience as a physician practicing family medicine," St. Bernards's nurses had failed to follow proper procedures and practices, which resulted, in his opinion, in Nelson's injuries. Nurse Mullen also testified that St. Bernards's nurses had failed to follow the hospital's policies and procedures and that, in his opinion, this caused Nelson's injuries.

During the later instruction conference, Nelson objected to the circuit judge instructing the jury with an Arkansas Model Jury Instruction, AMI Civ. 1501–A, which mirrors Arkansas Code Annotated § 16–114–206(a), and instructs the jury that it may consider only the expert testimony of those witnesses engaged in the same specialty as the defendant in determining the defendant's standard of care and whether the defendant failed |₄to act in accordance with that standard.[2] Nelson proffered, in addition, a modified version of AMI Civ. 1501–A that read as follows:

> In treating a patient, a nurse must possess and apply with reasonable care the degree of skill and learning ordinarily possessed and used by members of her profession in good standing, engaged in the same specialty in the locality in which he or she practices, or in a

1. St. Bernards later raised charitable immunity as a defense in its March 31, 2006 answer to Nelson's first amended complaint.

2. Arkansas Code Annotated § 16–114–206(a) provides as follows:

(a) In any action for medical injury, when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, the plaintiff shall have the burden of proving:

(1) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant, the degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he or she practices or in a similar locality;

(2) By means of expert testimony provided only by a medical care provider of the same specialty as the defendant that the medical care provider failed to act in accordance with that standard; and

(3) By means of expert testimony provided only by a qualified medical expert that as a proximate result thereof the injured person suffered injuries that would not otherwise have occurred.

similar locality. A failure to meet this standard is negligence.

In determining the degree of skill and learning the law required and in deciding whether the St. Bernards' nurses applied the degree of skill and learning the law required, you may consider only the evidence presented by the physicians and nurses called as expert witnesses and evidence of professional standards presented in the trial.

In deciding whether any negligence of the St. Bernards' nurses was a proximate cause of any injury to Doris Nelson, you may consider only the expert testimony provided by the qualified doctors and nurses called as expert witnesses.

In considering the evidence of any other issue in this case, you are not required to set aside your common knowledge, but you have a right to consider all the evidence in light of your own observations and experiences in the affairs of life.

At the instruction conference, Nelson argued that her proffered instruction was appropriate because the jury should be allowed to consider Dr. Schrader's testimony concerning the nurses' standard of care. The circuit judge, however, denied Nelson's instruction and found that it was inconsistent with his previous ruling that Dr. Schrader could not give a standard-of-care opinion regarding the nurses and because Dr. Schrader had not been qualified as an expert on nursing.

Nelson then asserted that AMI Civ. 1501–A was an incorrect statement of the law because the statutory basis for the instruction, § 16–114–206(a), was unconstitutional in that it conflicted with Rule 702 of the Arkansas Rules of Evidence. The circuit judge, however, instructed the jury with the unmodified version of AMI Civ. 1501–A, which informed the jury that it could only consider the testimony provided by nurses in determining whether St. Bernards's nursing staff breached its standard of care.

▮ It is well settled that a party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Barnes v. Everett,* 351 Ark. 479, 95 S.W.3d 740 (2003). When instructions are requested that do not conform to the Arkansas Model Jury Instructions (AMI), they should be given only when the circuit judge finds that the AMI instructions do not contain an essential instruction or do not accurately state the law applicable to the case. *Id.* This court will not reverse a circuit judge's refusal to give a proffered instruction unless there was an abuse of discretion. *Id.*

We conclude that Nelson was not entitled to her modified version of AMI Civ. 1501–A because there was no basis in the evidence to support giving the instruction. Specifically, Dr. Schrader was never qualified as an expert on nursing and the circuit judge did not allow him to testify directly to the standard of care for nurses.

Nelson urges on appeal that the circuit judge ruled that Dr. Schrader could testify as to the standard of care for nurses at the May 7, 2007 pretrial hearing on the appellees' motion in limine to prevent, among other things, Dr. Schrader from testifying to the standard of care for nurses. At that hearing, the circuit judge ruled from the bench:

> If he's specific about, this standard of nursing care that was violated, a doctor, a physician, should be able to testify to that. It may not be the same specialty, but certainly the physician would have the expertise. I'm going to allow him to do it.

Nevertheless, in the circuit judge's written order filed on May 18, 2007, he amended his oral ruling and ruled that "criticisms expressed by [Dr. Schrader] with respect to . . . the nurses employed by [St. Bernards] . . . and issues of speculation as to standard of care, proximate cause, or damages expressed by [Dr. Schrader] . . . shall be reviewed at trial."

Quite simply, the written order controls over the judge's oral ruling. *Nat'l Home Ctrs., Inc. v. Coleman,* 370 Ark. 119, 257 S.W.3d 862 (2007). In addition, counsel for St. Bernards objected to Nelson's counsel's asking Dr. Schrader about his familiarity with the standard of care for registered nurses during his direct examination, after which the following colloquy occurred between counsel and the judge:

COUNSEL FOR ST. BERNARDS: Judge, counsel has asked a question at this point about nursing standard of care. We object that there's been any foundation laid with this witness that he has any expertise at all in the area of nursing standard of care.

THE COURT: Didn't I run into this before? Seems to me that a doctor would have the—

COUNSEL FOR NELSON: Judge you addressed this in the first pretrial and said that the doctor could testify but from what his observation about the nursing, what nursing should and should not do from his experience in observing nursing. You've already ruled on that.

COUNSEL FOR ST. BERNARDS: Judge, you actually didn't rule. You said you'd see how things played out at trial. There's been no foundation laid. If the court is inclined to let him testify

as to observations of what he as a physician would expect, that's one thing but still doesn't go to standard of care.

THE COURT: I'll let him testify as to what he as a physician would expect and believe a nurse would do; however, as far as the direct standard of care, let's let the nurses testify to that.

COUNSEL FOR NELSON: Your Honor, let me state this for the record. Under the rule, I think it's 702, the qualifications of an expert witness are within the purview of the court. That's the rule. You determine based upon what the witness may testify as to what—

THE COURT: Like I say, I'm going to let him testify because I think a doctor would normally be expected to know what was expected of a qualified nurse, but as far as somebody saying this is outside the standard of care of a duly trained and licensed nurse, let's let the nurses testify to that. But he can testify as to what his general expectations are as to the services they provide, what a normal nursing situation would entail. But you need to lay a foundation how he knows. Of course, 30 years of being a doctor, he pretty well knows what nurses do.

COUNSEL FOR NELSON: I'm about to do that, your Honor.

THE COURT: I still want the actual standard to be testified to by the doctor or by the nurses rather.

This ruling by the circuit judge is clear.[3] As noted above, during the instruction conference at trial, the circuit judge denied Nelson's proffered instruction that sought to inform the jury that it could consider

---

**3.** Nelson has not independently appealed the circuit judge's ruling that § 16–114–206(a) controls the admissibility of Dr. Schrader's testimony as to the standard of care for nurses rather than Arkansas Rule of Evidence 702 but makes that argument only in the context of the failure to give the proffered instruction.

the testimony of Dr. Schrader as to the standard of care for St. Bernards's nurses. In doing so, the circuit judge found that the proffered instruction was inconsistent with his previous ruling that Dr. Schrader could not testify directly as to the standard of care for nurses and that Dr. Schrader had not been qualified as an expert on nursing.[4] Hence, because Dr. Schrader was never qualified as an expert on nursing care and was not allowed to testify directly as to the nursing standard of care, there was no basis in the evidence to support the judge's giving Nelson's proffered instruction. In light of this, the circuit judge did not abuse his discretion in refusing Nelson's proffered instruction.

There is one additional point to be made here. Nelson never proffered to the circuit judge or this court what testimony Dr. Schrader would have given on the nurses' standard of care, had he been allowed to testify on that standard. The failure to proffer left this court and the circuit judge in the dark as to Dr. Schrader's precise testimony on the nurses' standard of care. Only with that proffered testimony can this court assess on appeal whether the circuit judge erred in refusing the proffered instruction. *See* Ark. R. Evid. 103(a)(2)(2008); *Duque v. Oshman's Sporting Goods Servs., Inc.*, 327 Ark. 224, 226, 937 S.W.2d 179, 180 (1997) ("To challenge a ruling excluding evidence, an appellant must proffer the excluded evidence so as to permit review of a trial court's decision, unless the substance of the evidence is apparent.").

Nelson also contends that the circuit judge's instruction on AMI Civ. 1501–A was erroneous because it prevented the jury from considering evidence of St. Bernards's policies and procedures. We dis-

agree with that interpretation of the model instruction. Plus, this argument is flawed because Nelson's nursing expert, Nurse Mullen, did testify concerning St. Bernards's policies and procedures as part of Nelson's case-in-chief.

Because there was no evidence to support giving Nelson's proffered instruction, this court need not consider her remaining arguments that AMI Civ. 1501–A is an incorrect statement of the law because § 16–114–206(a) violates the separation-of-powers doctrine or because § 16–114–207(1) and Arkansas Rule of Evidence 702 qualify § 16–114–206(a) in such a way as to allow the jury to consider expert testimony in addition to the required expert testimony from a witness of the same medical speciality as the defendant.

## II. *Nurse Sexton's Video Deposition*

■ For her second point, Nelson claims that the circuit judge erred by allowing the appellees to present to the jury the video-deposition testimony of Nurse Elizabeth Sexton without first meeting the requirements of Arkansas Rule of Civil Procedure 32(a)(3). Rule 32(a)(3) provides that the deposition of a witness, whether or not a party to the action, may be used by any party for any purpose if the circuit judge finds that one of the following five conditions is met:

(A) that the witness is dead; or (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of this state, unless it appears that the absence of a witness was procured by the party offering the deposition; or (C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment;

---

4. In denying Nelson's motion for a new trial on this point, the circuit judge noted from the bench that Nelson had not attempted to quali- fy Dr. Schrader as an expert witness on the standard of care for nursing services.

or (D) the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

Ark. R. Civ. P. 32(a)(3) (2008).

■ The record substantiates that Nurse Sexton's video deposition was taken in anticipation of her being out of state at the time of an earlier trial date. When the trial was then continued to a future date, Nelson argues that it was no longer appropriate for the appellees to play Sexton's video deposition in lieu of her testifying in person. Our standard of review on this point is clear. This court will not reverse a circuit judge's decision on the admission or rejection of evidence absent an abuse of discretion. *See, e.g., Hively v. Edwards,* 278 Ark. 435, 646 S.W.2d 688 (1983).

At trial, the circuit judge ruled that Nelson's objection to Sexton's video-deposition testimony was untimely and allowed the defendants to present Sexton's deposition testimony to the jury. We conclude that the circuit judge's decision, finding Nelson had waived her Rule 32(a)(3) argument for failing to make a timely objection, was not an abuse of discretion.

The first mention of Sexton's video deposition was made by Nelson's counsel in his opening statement on the first day of the trial: "Now the nurse that's on duty at that time, [Sexton], her deposition has been taken. We know a lot of things because the lawyers take depositions and know what the witnesses are going to say. Her testimony will be by video, as I recall." After this statement, Nelson's counsel proceeded to describe the anticipated testimony of Sexton in detail, again saying at one point: "Now, you'll hear in the nurse's deposition that will be played for you...." Dr. Stubblefield's counsel also mentioned Sexton's video deposition in her opening statement, saying: "you'll be able to listen to her video deposition and she'll explain completely what she found." St. Bernards's counsel's opening argument, in addition, referenced Sexton's testimony.

Along this same line, at the close of Dr. Stubblefield's case-in-chief, the following colloquy occurred:

COUNSEL FOR ST. BERNARDS: Your Honor, my nurse expert will come in, in the morning and then we have the nurse video deposition.

THE COURT: Mr. Rodgers [Nelson's counsel] might want to play the entire deposition tomorrow morning, too.

COUNSEL FOR ST. BERNARDS: That's fine.

THE COURT: You can do it if you want.

COUNSEL FOR NELSON: Okay.

The court then recessed for the day. The next morning, counsel for St. Bernards presented the testimony of its nurse expert, Connie Ash. During a court recess in the middle of Ms. Ash's testimony, Nelson's counsel first objected to the defense playing Sexton's video deposition to the jury, to which the circuit judge responded:

The problem the court has is you could have made that objection on the first day of the trial which was four days ago and then I probably would have granted your objection. But in view of the fact that we've all known that this lady was going to testify by deposition, I'm going to—I mean, this late objection is just untimely.

We agree that Nelson's objection on this point was untimely. At the very least, Nelson's counsel impliedly agreed to the presentation of Sexton's video testimony as evidenced by his comments at trial preceding his objection. *Cf. Goodwin v. Harri-*

*son,* 300 Ark. 474, 780 S.W.2d 518 (1989) (finding that appellant's actions were consistent with an implied agreement between the parties that depositions would not be used as evidence at trial; thus, appellant had waived the literal wording of Ark. R. Civ. P. 32(a)(3)). Moreover, Nelson cannot show prejudice as a result of the circuit judge's ruling. *See, e.g., Bridges v. Ark. Motor Coaches, Ltd. Inc.,* 256 Ark. 1054, 1057, 511 S.W.2d 651, 653 (1974) ("[W]e have often held that error without prejudice will be no ground for reversal."). Nelson's counsel clearly participated in thorough cross-examination of Sexton in the video deposition and had the right to mount any objections during that same deposition. *See* Ark. R. Civ. P. 32(b) (2008).

### III. *Nelson's Video Deposition*

■ Prior to trial, Nelson's testimony was taken during a video deposition because she was suffering from cancer and it was unknown whether she would be able to testify in person at the time of trial. Nelson, though, was able to testify at trial and was cross-examined by the appellees during her case-in-chief. When Dr. Stubblefield presented his evidence, the circuit judge allowed him, over Nelson's objection, to play to the jury selected portions of their cross-examination of Nelson during her video deposition.

Nelson now maintains that it was error for the circuit judge to allow Dr. Stubblefield to present portions of her deposition testimony during Dr. Stubblefield's case-in-chief. In support of her argument, Nelson contends that she was present at the trial and had already testified, that the presentation of her deposition testimony was cumulative because it covered points on which she had been cross-examined during trial, and that her deposition testimony contained hearsay statements made by her husband.

Again, a circuit judge is accorded wide discretion in evidentiary rulings, and this court will not reverse such rulings absent a manifest abuse of discretion. *See, e.g., Skiver v. State,* 336 Ark. 86, 983 S.W.2d 931 (1999). Arkansas Rule of Civil Procedure 32(a)(2) states that "[t]he deposition of a party ... may be used by an adverse party *for any purpose.*" Ark. R. Civ. P. 32(a)(2) (2008) (emphasis added). Here, Nelson was a party plaintiff and Dr. Stubblefield and St. Bernards were the adverse parties. Thus, the presentation of Nelson's deposition testimony during Dr. Stubblefield's case-in-chief was a "perfectly permissible practice." *Arthur v. Zearley,* 337 Ark. 125, 139, 992 S.W.2d 67, 75 (1999) (Zearleys entitled to present the deposition testimony of Arthur irrespective of his availability to testify at trial); *see also Ouachita Mining & Exploration, Inc. v. Wigley,* 318 Ark. 750, 887 S.W.2d 526 (1994) (Ouachita Mining was entitled to present the deposition of Wigley irrespective of the hearsay rule and irrespective of his availability at trial).

As to Nelson's hearsay argument regarding statements made to her by her husband and testified to by her in the video deposition, the rules of evidence are clear that admissions by a party-opponent are not hearsay. Ark. R. Evid. 801(d)(2) (2008); *Zearley, supra; Ouachita Mining, supra.* Nelson admitted that the statements by her husband were made.[5] We

---

5. Counsel for St. Bernards. Do you recall your husband confirming for us that he had observed you use the nurse call button before he had left that evening to return home to your grandson?

Nelson: Yes.

. . .

Counsel for St. Bernards: Do you recall through the testimony of your husband some nine days ago that just as you did, he too

hold that it was not an abuse of discretion for the circuit judge to allow the appellees to present Nelson's deposition testimony.

## IV. *Medical Assurance*

■ For her final point, Nelson asserts that the circuit judge erred by prohibiting her from presenting to the jury that her case was against St. Bernards's insurance carrier, Medical Assurance, pursuant to the direct-action statute—Arkansas Code Annotated § 23-79-210. Nelson originally filed suit against Dr. Stubblefield and St. Bernards. However, when St. Bernards filed an answer in which it pled that it was a nonprofit entity insured by Medical Assurance, Nelson filed an amended complaint naming Medical Assurance as a party defendant under section 23-79-210. As already noted in this opinion, St. Bernards pled charitable immunity at a later time.

Prior to trial, St. Bernards moved in limine to prevent Nelson from, among other things, mentioning or soliciting testimony from any witness that Medical Assurance was its insurer. In moving as it did, St. Bernards argued that such information was irrelevant and prejudicial under the Arkansas Rules of Evidence. At a hearing on the motion in limine, Nelson responded that Medical Assurance was a named defendant. In a written order, the circuit judge ruled that Nelson could not present to the jury that Medical Assurance was St. Bernards's insurance carrier, so long as St. Bernards waived its charitable-immunity defense.

At trial, before opening statements but after voir dire, Nelson objected on grounds that it was prejudicial that she would not be able to bring out that Medical Assurance was a named party in the lawsuit. The following colloquy ensued:

THE COURT: [T]he reason I ruled that you are to direct your inquiries toward the hospital and not the insurance carriers is because the mere mention of insurance injects a prejudicial effect to the jury and to avoid that prejudicial effect, the court feels like it would be better—even though the insurance carrier is the named party—that it would be avoided and any reference to the incident be directed toward the hospital rather than the insurance carrier who is an indemnifier.

COUNSEL FOR ST. BERNARDS: That's correct, your honor . . . with the provisal, which we've agreed to abide by, that so long as we don't try to rest on the charitable immunity status of the hospital.

THE COURT: The minute you do that I'm going to let him go after the insurance company.

. . .

But that's the reason I've ruled that way is because it creates an unreasonable and unfair inference that you've got a deep pocket insurance company that's going to cover for the hospital so I think that's the better way to present it.

In support of her argument on this point, Nelson asserts that she was entitled

examined your body and could see no evidence of any bruising or injury to any part of it, do you recall that?

NELSON: Yes.

COUNSEL FOR ST BERNARDS: Do you recall likewise that in your presence your husband told us that as he observed you over the next

30 days you were discharged from St. Bernards that you became pain free and returned to normal activities two weeks after Dr. Toneyman performed the surgery on your back, is that correct?

NELSON. Yes.

to establish to the jury that Medical Assurance "was the defendant being sued, and would be the defendant ultimately liable" should the jury find that the St. Bernards nursing staff negligently caused her injuries because St. Bernards pled charitable immunity as a defense. Nelson further claims that her inability to tell the jury that Medical Assurance, as St. Bernards's insurer, was a named defendant was prejudicial to her because she was not able "to effectively explore the liability insurance issue to discover [the jurors'] potential for bias in favor of St. Bernards" during voir dire.

To reiterate, this court reviews a circuit judge's decision to admit or reject evidence under an abuse-of-discretion standard. *See Hively v. Edwards, supra.* We cannot say that the circuit judge abused his discretion by not allowing Nelson to present evidence that St. Bernards's insurance carrier was a named defendant.

This court has long recognized the prejudice inherent in needlessly informing juries about insurance coverage. *Synergy Gas Corp. v. Lindsey,* 311 Ark. 265, 843 S.W.2d 825 (1992); *York v. Young,* 271 Ark. 266, 608 S.W.2d 20 (1980); *Pickard v. Stewart,* 253 Ark. 1063, 491 S.W.2d 46 (1973); *Strahan v. Webb,* 231 Ark. 426, 330 S.W.2d 291 (1959); *Pekin Stave & Mfg. Co. v. Ramey,* 104 Ark. 1, 147 S.W. 83 (1912). We have held that the injection of insurance coverage is proper only when it is relevant and pertinent to an issue in the case. *See, e.g., Peters v. Pierce,* 308 Ark. 60, 823 S.W.2d 820 (1992). The question is whether a reference to insurance coverage is relevant to an issue before the court or "is designed to skew the jury's thinking because of the presence or absence of a deep pocket." *Hacker v. Hall,* 296 Ark. 571, 576, 759 S.W.2d 32, 35 (1988). Nelson has simply failed to convince this court that Medical Assurance's status as a

party defendant was relevant to the issues before the court in this action—whether she was injured as a result of the negligence of Dr. Stubblefield or the St. Bernards nursing staff—particularly where St. Bernards presented its defense in its own name and did not assert its right to immunity from suit at trial. In fact, Nelson argues in her brief that all she "sought to establish to the jury was that [Medical Assurance] was the defendant being sued, and would be the defendant ultimately liable." Because this is wholly irrelevant on the issue of St. Bernards's negligence, it is clear that Nelson's only purpose was "to press unnecessarily upon the jury's attention the fact that a defendant is indemnified against loss for the injury which is the subject-matter of the suit." *Pekin Stave & Mfg. Co.,* 104 Ark. at 9, 147 S.W. at 86. This is not a proper purpose.

Furthermore, Nelson cannot show that she was prejudiced by her inability to present Medical Assurance's status to the jury, and this court will not reverse in the absence of prejudice. *See, e.g., Viravonga v. Samakitham,* 372 Ark. 562, 279 S.W.3d 44 (2008). Nelson contends that "she could not effectively voir dire because she was prohibited from establishing St. Bernards was not financially responsible in the event its employees were found to be negligent." She argues further that "she was prejudiced because she was not entitled to effectively exercise her preemptory [sic] challenges since she could not explore the liability insurance issue to discover [the jurors'] potential for bias in favor of St. Bernards."

And, yet, at no point did Nelson argue to the circuit judge that his decision prevented her from adequately conducting voir dire. It is elementary that this court will not consider arguments that were not presented to the circuit judge. *See, e.g., Bell v. Misenheimer,* 2009 Ark. 222, 308 S.W.3d

120. It is incumbent upon the parties to raise arguments initially to the circuit judge in order to give that judge an opportunity to consider them; otherwise, this court would be placed in the position of possibly reversing a circuit judge for reasons not addressed by that judge. *Id.* Moreover, Nelson has not established how the circuit judge's decision prevented her from discovering whether jurors were biased in favor of St. Bernards. Nelson was free to and did, in fact, explore the jurors' potential for bias in favor of St. Bernards during voir dire.

We hold that the circuit judge did not abuse his discretion by prohibiting Nelson from presenting to the jury the fact that St. Bernards's insurance carrier was a named defendant.

Affirmed.