Cite as 2019 Ark. App. 386

# ARKANSAS COURT OF APPEALS
### DIVISION III
No. CV-18-340

| | |
|---|---|
| THOMAS SANDERS | **Opinion Delivered**: September 18, 2019 |
| APPELLANT | |
| | APPEAL FROM THE PULASKI |
| V. | COUNTY CIRCUIT COURT, |
| | SEVENTEENTH DIVISION |
| UNION PACIFIC RAILROAD | [NO. 60CV-12-585] |
| COMPANY | |
| APPELLEE | HONORABLE MACKIE M. PIERCE, |
| | JUDGE |
| | |
| | AFFIRMED |

## MEREDITH B. SWITZER, Judge

Appellant Thomas Sanders sued his employer, appellee Union Pacific Railroad Company (Union Pacific), pursuant to the Federal Employers' Liability Act (FELA) for injuries he claims he sustained while he was working at Union Pacific's Jenks Shop, a locomotive-rebuild facility in North Little Rock, Arkansas. The case ultimately proceeded to a jury trial, and a Pulaski County Circuit Court jury returned a verdict in favor of Union Pacific. Sanders appeals raising several arguments in support of reversal. We affirm.

### I. *Background*

Thomas Sanders was employed as a machinist at Union Pacific's Jenks Shop. He alleges that he was injured at work while he was testing an experimental device fabricated for use with a huck gun.

A huck gun is used to assemble gear cases for locomotive-traction motors. When a huck gun is used, a threaded steel pin that is similar to a bolt is placed through holes in gear

casings. Then an aluminum collar is placed over the threaded end of the pin. The collar and the pin are inserted into the huck gun, which uses hydraulic pressure to squeeze the collar onto the pin. Once the collar is secure, the jaws of the huck gun grab the pin and pull on it until it breaks off at a groove positioned near the end of the collar. The protective collar is required pursuant to the huck-gun manufacturer's instructions and warnings.

Sanders's job duties required use of a huck gun. Before Sanders's incident, several employees had operated the huck gun without the use of the protective collar, which created a potentially dangerous scenario. When that happened, the pin would recoil when it broke and shoot across the shop floor in the opposite direction of the operator. As a result of this improper usage, several Union Pacific employees at the Jenks Shop, including Sanders, decided to develop a bracket that could be placed over the end of the pin to prevent it from shooting out in the event the collar was not attached.

On the morning of October 27, 2010, Foreman General Raymond Burke and Safety Implementation Leader Gerry Billson took the experimental bracket to the shop floor, and Sanders tested the bracket by operating a huck gun without the protective collar in place. A few hours after the test, Sanders reported to Billson that he had injured himself.

## II. *The Litigation*

Sanders sued Union Pacific alleging that he was ordered and directed by his supervisors to test the experimental bracket. Sanders further alleged that when he tested the bracket, the force of the huck bolt was transferred so that the huck gun recoiled and struck him, causing serious, disabling injuries to his neck, back, shoulder, inner ears, brain, and head.

2

Union Pacific denied liability. It also raised the affirmative defense of contributory negligence. As the litigation progressed, Sanders filed a motion in limine, seeking to preclude Union Pacific from making any argument that he assumed the risk related to the testing of the bracket for the huck gun because assumption of risk is not an available defense in a FELA case. Union Pacific responded to the motion in limine, asserting that it had no intention of arguing assumption of risk but that it was entitled to argue that Sanders was contributorily negligent, and it intended to do so. The circuit court did not rule on Sanders's motion in limine, and throughout the litigation, the parties continued to dispute whether Union Pacific was improperly arguing assumption of risk disguised as contributory negligence.

Union Pacific filed its own motion in limine. In it, Union Pacific requested that the circuit court exclude evidence relating to a mechanical alert issued by Union Pacific manager Gene Delahunt one week after the incident. Its motion was based on Arkansas Rule of Evidence 407, which governs subsequent remedial measures. The alert was designated as a safety alert, and it included a description of corrective action taken after Sanders's alleged injury. The circuit court took the matter under advisement at a pretrial hearing. Ultimately, the circuit court refused to allow the introduction of the mechanical alert into evidence.

A jury trial was held on September 6, 7, 8, 11, and 12, 2017. Facts relating to how Sanders came to test the bracket were disputed at trial. Sanders and James Brian Kelley testified that Raymond Burke and Gerry Billson instructed Sanders to test the bracket. Alternatively, Billson testified that it was Sanders's idea to test the bracket with Sanders

3

stating that "we won't know [whether it works] until we try." Additionally, the cause and extent of Sanders's alleged injuries were sharply disputed. Sanders alleged that the recoil of the gun was so severe that it caused him to stumble and lose his hard hat and glasses. By contrast, other witnesses claimed that Sanders showed no immediate signs of physical injury when he tested the bracket. Witnesses also testified that the recoil of the huck gun was less than that of a twelve-gauge shotgun and that Sanders had used an improper stance when he tested the bracket, which Union Pacific claims caused any injuries Sanders may have sustained.

When it came time to prepare the jury instructions, the parties disagreed on the use of instructions relating to assumption of risk and contributory negligence. Sanders presented an assumption-of-risk instruction that Union Pacific opposed. Union Pacific presented contributory-negligence instructions that Sanders opposed. The circuit court ultimately declined to instruct the jury using the assumption-of-risk instruction proposed by Sanders, and it instructed the jury using the contributory-negligence instructions offered by Union Pacific.

Following deliberations, the jury returned a verdict in favor of Union Pacific, finding that it was not liable for Sanders's alleged injuries. The verdict was reduced to judgment, and Sanders's complaint was dismissed with prejudice.

Thereafter, Sanders filed a motion for new trial pursuant to Arkansas Rule of Civil Procedure 59(a)(1), (6), and (8). In his motion, Sanders argued that the circuit court committed prejudicial error by refusing an assumption-of-risk instruction, allowing contributory-negligence instructions, and excluding evidence relating to the mechanical

4

alert issued after Sanders's incident.  Sanders also argued that the jury's findings were against the weight of the evidence.  Union Pacific responded and objected to the motion for new trial.  The circuit court did not rule on the motion, and it was deemed denied after thirty days.

Sanders timely appealed from the judgment and the denial of his motion for new trial. In this appeal, Sanders seeks reversal on several bases.  He contends that the judgment should be reversed because the circuit court erred by (1) refusing to instruct the jury on assumption of risk; (2) instructing the jury on contributory negligence; and (3) sustaining Union Pacific's objections to the introduction of the mechanical alert.  Sanders also argues that the jury's verdict was clearly against the weight of the evidence and that the circuit court erred by refusing to grant his motion for new trial.

III.  *The FELA*

This lawsuit is governed by the FELA, an act that governs the liability of a railroad in all work-related injuries. Pursuant to this act, a railroad has a duty to provide its employees with a reasonably safe place to work at all times. *Ellis v. Union Pac. R.R. Co.*, 329 U.S. 649 (1947).  The FELA prohibits any attempt by a defendant to assert an assumption-of-risk defense.  *See* 45 U.S.C. § 54 (2009).  In any action brought under the FELA to recover damages for injuries to any employee, "such employee shall not be held to have assumed the risks of his employment in any case where such injury . . . resulted in whole or in part from the negligence of any of the officers, agents, or employees of the carrier." *Id*.  However, an employer defending a FELA claim has a right to argue that a plaintiff was

contributorily negligent if there is evidence to support it. *See, e.g., Ackley v. Chicago & N.W. Transp. Co.*, 820 F.2d 263, 268 (8th Cir. 1987).

A principal issue raised on appeal is whether Union Pacific made an improper assumption-of-risk argument to the jury under the guise of its being a contributory-negligence argument. The distinction between the two legal concepts can be nebulous. Assumption of risk is defined as a person voluntarily exposing himself to a dangerous situation inconsistent with his safety, knowing of the danger and risk of injury from it. *See* AMI Civ. 306 (2018); *Capps v. McCarley & Co.*, 260 Ark. 839, 544 S.W.2d 850 (1976). Contributory negligence is defined as a careless act or omission on a plaintiff's part tending to add new dangers to conditions that the employer created or permitted to exist. *Paul v. Mo. Pac. R.R. Co.*, 963 F.2d 1058 (1992). A primary distinction between the two theories is that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of conduct of the reasonable person. "Knowledge of the risk is the watchword of assumption of risk." William L. Prosser & Page Keeton, Prosser and Keeton on the Law of Torts § 68 (5th ed. 1984).

IV. *The Assumption-of-Risk Instruction*

Sanders sought to have the jury instructed that assumption of risk was not an available defense in this case. Sanders claimed he was entitled to this instruction because Union Pacific improperly defended the case against it by presenting evidence that he assumed the risk associated with testing the bracket for the huck gun.

6

Sanders's proposed assumption–of–risk instruction as read by counsel at the jury-instruction conference provided,

> If Plaintiff Sanders' injury is caused or contributed to by the negligent act or omission of a fellow employee, acting in the course of the fellow employee's employment, then Defendant Union Pacific Railroad Company would be responsible for that act or omission of the fellow employee.
>
> Section 4 of the Federal Employers Liability Act says, "In any action brought against any common carrier to recover damages for injuries to any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury resulted in whole or in part from the negligence of any of its officers, agents, or employees of such carrier; and no employee shall be held to have assumed the risks of his employment in any case where the violation of such common carrier of any statute enacted for the safety of employees contributed to the death of such employee.

This proposed instruction was also attached to the motion for new trial, but in the motion for new trial, the two paragraphs were reversed.

After Sanders offered this instruction, Union Pacific made several arguments against its inclusion. Union Pacific argued that the instruction should not be given because it had not raised assumption of risk as a defense. It also argued against its use because the first paragraph of the instruction was duplicative and the second paragraph was inapplicable to the facts of this case. Based on those objections, counsel for Sanders offered to modify the instruction. The circuit court did not address Sanders's offer to modify the instruction. Instead, it expressed its judgment that Union Pacific had not argued assumption of risk. The circuit court ultimately stated that it did not "want to muddy the water with an assumption-of-risk instruction." "If [Union Pacific] gets there, and they start making that argument, you object and I'll sustain it. . . . Alright?" Counsel for Sanders agreed. Thereafter, Sanders never objected on the basis that Union Pacific was arguing assumption of risk.

7

As a preliminary matter, we address several arguments made by Union Pacific regarding whether any alleged error was preserved for our review.

First, Union Pacific contends that the circuit court never ruled on the use of the proposed instruction; thus, its exclusion is not preserved for our review. Union Pacific emphasizes that during the discussion of the proposed instruction, counsel for Sanders agreed to see whether Union Pacific made an assumption-of-risk argument during the remainder of the trial before revisiting the issue of the instruction's use. The circuit court stated that it did not want to "muddy the water" by giving the instruction since it had determined that Union Pacific had not argued assumption of risk as a defense and it did not thereafter give the instruction. We conclude that the circuit court sufficiently ruled on the matter.

Union Pacific also argues that Sanders's proffer of the proposed instruction was ineffective to preserve the issue for review because it was uncertain and nondescript. Here, Union Pacific's argument is based on the premise that counsel for Sanders read the paragraphs in a different order than that which appeared in the written instruction attached to the motion for new trial. We are not persuaded by this argument. The transposition of the paragraphs did not render the instruction uncertain and nondescript.

Next, Union Pacific argues that our court could affirm on this point because AMI Civil 306 covered the same subject matter. Generally, a court does not err in refusing a non-AMI instruction when an AMI instruction applicable to the same subject matter is available. *Wharton v. Bray*, 250 Ark. 127, 129, 464 S.W.2d 554, 555 (1971). Additionally, if a party offers an instruction in lieu of an AMI instruction and it is refused, preservation requires the party to specify the reasons why the AMI instruction is inadequate or inaccurate.

8

*See Vangilder v. Faulk*, 244 Ark. 688, 694, 426 S.W.2d 821, 825 (1968). We decline to affirm on this basis as well because AMI Civil 306, which merely defines assumption of risk, does not fully cover the subject matter Sanders sought to address in his proposed instruction.

With these preliminary issues addressed, we direct our attention to the merits of Sanders's argument—whether the circuit court erred by refusing to give the assumption-of-risk instruction. A party is entitled to a jury instruction when it is a correct statement of the law and there is some basis in the evidence to support giving the instruction. *Nelson v. Stubblefield*, 2009 Ark. 256, 308 S.W.3d 586. Our court will not reverse a circuit court's refusal to give a proffered instruction unless there was an abuse of discretion. *Id.* The abuse-of-discretion standard is "a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration." *Lone v. Koch*, 2015 Ark. App. 373, at 4, 467 S.W.3d 152, 155. Here, the circuit court did not abuse its discretion by finding that there was no basis in the evidence to support giving the instruction.

We begin by recognizing that the instruction itself is problematic. The first paragraph, which provides that Union Pacific is responsible for the acts of its employees, was duplicative in that it was addressed by an agreed-on instruction—jury instruction Number 10. Jury instruction Number 10 provided that "any negligent act or omission of an officer, or employee, or other agent of a corporation, in the performance of that person's duties, is held in law to be the negligence of the corporation." A court does not abuse its discretion when it rejects an instruction that is covered by other instructions. *Williams v. Ingram*, 320 Ark. 615, 622, 899 S.W.2d 454, 458 (1995). Additionally, the second paragraph

9

of the proposed instruction is not relevant to the facts of this case. This paragraph pertains to inapplicable strict-liability and statutory-violation principles—specifically, this instruction is to be used when the Safety Appliance Act or the Boiler Inspection Act is at issue. Sanders has not made claims under either of these acts.

Moreover, we are not convinced that the evidence warranted an assumption-of-risk instruction. In considering whether Union Pacific presented an assumption-of-risk defense to the jury, we are reminded that an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for the employee to perform the job duties constitutes an assumption of risk. AMI Civ. 306; *Capps v. McCarley & Co.*, 260 Ark. 839, 544 S.W.2d 850 (1976).

Applying this definition, we acknowledge that evidence indicated Sanders had no knowledge of any dangerous condition associated with the testing of the bracket. Sanders stated that he "did not have any reason to know what would happen" if he tested the device and that he was not expecting what he felt when he hucked the gear case. Sanders further testified that "before [he] operated the huck gun on that incident, it did not even cross [his] mind that this could be an unsafe task." There is evidence to indicate that Sanders did not voluntarily and knowledgeably accept a dangerous condition when he tested the bracket for the huck gun.

Furthermore, the circuit court identified potential confusion with giving the assumption-of-risk instruction. When declining to give it, the circuit court expressed its position that the instruction was not pertinent because Union Pacific had not argued

10

assumption of risk and stated that it did not "want to muddy the water with an assumption–of-risk instruction."

We hold that the circuit court did not abuse its discretion in refusing to give this instruction. There is no indication that the circuit court acted improvidently, thoughtlessly, or without due consideration. *Lone*, *supra*. In fact, the circuit court thoughtfully considered the question of whether the instruction was proper and determined it was not.

V. *The Contributory-Negligence Instructions*

Next, Sanders argued that the circuit court committed reversible error by submitting contributory-negligence instructions to the jury. A primary basis for his argument is that Union Pacific was actually claiming Sanders assumed the risk of his actions, not that he was contributorily negligent.

During the discussion of the proposed jury instructions, Union Pacific offered contributory-negligence instructions based on AMI Civil 305 and Eighth Circuit Civil Jury Instruction 15.63. The instruction based on AMI Civil 305 provides:

> It was the duty of Plaintiff Thomas Sanders to exercise reasonable and ordinary care for his own safety.

The instruction based on Eighth Circuit Civil Jury Instruction 15.63 reads as follows:

> If you find in favor of Plaintiff Thomas Sanders . . . you must consider whether he was also negligent. Under this instruction, you must assess a percentage of the total negligence to Plaintiff Thomas Sanders on his claim against Defendant Union Pacific if all of the following elements have been proved:
>
> First, Plaintiff Thomas Sanders failed to take proper precaution for his own safety or follow Union Pacific's rules; and
>
> Second, Plaintiff Thomas Sanders was thereby negligent; and

11

Third, such negligence of Plaintiff Thomas Sanders resulted in whole or in part in his injury.

If any of the above elements have not been proved by the greater weight of the evidence, then you must not assess a percentage of negligence to Plaintiff Thomas Sanders.

Sanders objected to the use of both instructions. The circuit court ultimately concluded that the evidence supported their use and gave the instructions.

A party is entitled to a jury instruction when it is a correct statement of the law and there is some basis in the evidence to support giving the instruction. *Nelson v. Stubblefield*, 2009 Ark. 256, 308 S.W.3d 586. Our court will not reverse a circuit court's decision to submit a jury instruction unless the circuit court abused its discretion. *Id*. Because the contributory-negligence instructions are correct statements of the law, the pertinent inquiry on appeal is whether there was some basis in the evidence to support giving them.

Contributory negligence is defined as a careless act or omission on a plaintiff's part tending to add new dangers to conditions that the employer created or permitted to exist. *Paul v. Mo. Pac. R.R. Co.*, 963 F.2d 1058 (1992). Although disputed, there was evidence that Sanders acted carelessly. For example, Sanders helped design the bracket, and Billson testified that it was Sanders's idea to test the bracket that day. Additionally, evidence relating to Sanders's behavior during the test raises contributory-negligence issues. Several witnesses testified that the recoil from the use of the huck gun was less than that of a twelve-gauge shotgun and opined that Sanders was not prepared and had an improper stance during the testing. Based on these facts in evidence, we conclude that the circuit court did not abuse its discretion by giving the contributory-negligence instructions.

12

## VI.  *The Mechanical Alert*

Sanders also challenges the circuit court's decision to exclude a mechanical alert created after the incident.  The mechanical alert was issued by Gene Delahunt.  Pertinent information in the mechanical alert included information on key factors, which provided:

> Despite eliminating the original risk, a possible secondary risk was introduced to the process when the team underestimated the reaction of the huck gun when the huck bolt discharge prevention device was used.  We failed to properly use the A3 problem solving method to fully vet out the one root cause to why this would occur and we attempted to engineer a solution to work around the potential risk.

Also included in the mechanical alert was a section on the action taken to correct key factors:

> After performing one of the problem solving techniques (5 ways) on the issue, the team determined that visual cues within the standard work station setup will reduce the probability of the huck bolt being discharged from the gear case.  In addition, other means to protect the employees from flying bolts will be investigated.  Despite the end result of this employee's injury, we will continue to strive for the best possible Risk Assessment solutions, however, we need to make sure we are utilizing the A3 problem solving as our standard method for determining the one root cause to the mitigating risk we identify.

Sanders sought to introduce the mechanical alert through the testimony of Gerry Billson.  Union Pacific objected on the basis that the alert was a subsequent remedial measure under Arkansas Rule of Evidence 407 and because a proper foundation had not been made for the alert's admission.  The circuit court sustained Union Pacific's objection.

On appellate review, we analyze whether the circuit court abused its discretion by excluding the mechanical alert.  *Metzgar v. Rodgers*, 83 Ark. App. 354, 128 S.W.3d 5 (2003).  For several reasons, we conclude that it did not.

Sanders argues that the mechanical alert was not a subsequent remedial measure under Arkansas Rule of Evidence 407.  Rule 407 provides,

13

Whenever, after an event, measures are taken which, if taken previously would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of subsequent measures if offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Here, Sanders argues that the alert was not evidence of subsequent remedial measures and that it was instead a summation of Union Pacific's failure to follow its established procedures. We disagree. The mechanical alert includes a discussion of the "action taken to correct," which indicates subsequent remedial measures taken by Union Pacific.[1]

We are not persuaded by Sanders's argument that the alert was not a subsequent remedial measure because it was merely an experimental test gone wrong. Because the alert establishes that the bracket will not be used again, it qualifies as a subsequent remedial measure despite the fact that it was used only once in an experimental test. Accepting Sanders's position would incentivize continued use of experimental devices despite concerns that they are harmful in direct contravention of the purpose of Rule 407, which is to encourage correction of potentially dangerous conditions.

Moreover, the circuit court was within its discretion to exclude the mechanical alert because a proper foundation had not been laid for its admission. It is well settled that a witness may not testify about a matter unless the witness has personal knowledge of that matter. Ark. R. Evid. 602, 901. Sanders did not seek to introduce the alert through Delahunt, who authored the alert. In fact, Delahunt did not testify at the trial. Billson

---

[1]We note that Sanders attempted to introduce the mechanical alert in its entirety without redaction.

14

testified merely that he knew what a mechanical alert was but that he did not recall seeing one for this incident. Accordingly, Billson was unable to authenticate this particular alert.

Sanders avers that the mechanical alert should have been allowed for purposes of impeaching Billson's testimony. Impeachment is an exception to Rule 407; however, Billson did not author the mechanical alert, and Sanders offers no authority that allows for the impeachment of a witness with the statement of another. Moreover, Sanders characterizes Billson's testimony as being that the test of the bracket was successful. The actual testimony establishes merely that the test was initially considered a success because the bracket did what they intended it to do—stop the bolt. During his testimony, Billson stated, "[T]here was a consensus among the group that the test had been successful. The plate stopped the pin." He further testified that "it surprised me when Mr. Sanders reported to me that he was injured because there were no issues during the test." Later, Billson testified, "It worked. As far as I am concerned, it—it was a successful—it stopped the bolt." Billson did not address whether he continued to believe that the test was successful subsequent to Sanders's alleged injuries. The impeachment exception to Rule 407 is therefore inapplicable in this instance.

For the foregoing reasons, we affirm on this point, holding that the circuit court did not abuse its discretion by excluding the introduction of the mechanical alert.

VII. *Whether the Verdict Is Against the Weight of the Evidence*

Sanders also seeks reversal based on the circuit court's denial of his motion for new trial filed pursuant to Arkansas Rule of Civil Procedure 59(a)(6). This rule allows a circuit

15

court to order a new trial when the verdict is clearly contrary to the preponderance of the evidence or is contrary to the law.

In reviewing the denial of a motion for new trial, our court will affirm the verdict if it is supported by substantial evidence, giving the verdict the benefit of all reasonable inferences in accordance with the proof. *Dovers v. Stephenson Oil Co.*, 354 Ark. 695, 700, 128 S.W.3d 805, 808 (2003). Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Id.* It is only when there is no reasonable probability that the incident occurred according to the version of the prevailing party or when fair-minded persons can only draw a contrary conclusion that a jury verdict should be disturbed. *Id.*

As we undertake our review of this point, we recognize that the jury returned a defense verdict. In instances in which a jury has returned a defense verdict, that verdict will generally be supported by substantial evidence because the plaintiff has the burden of proof, and the jury is the sole judge of credibility of witnesses and the weight and value of the evidence. *Webb v. Bouton*, 350 Ark. 254, 262, 85 S.W.3d 885, 889 (2002).

Despite this, Sanders argues that the jury's verdict was against the weight of the evidence because Union Pacific failed to fulfill its supervisory duties to assess risk before the testing of the bracket. He emphasizes that the manual for the huck gun warned against its use without the collar, that no one stopped him from testing the bracket, and that he experienced an impact from the recoil of the huck gun.

Based on our standard of review, we are not persuaded by Sanders's argument. First and foremost, the jury was free to accept or reject Sanders's testimony and that of his

16

witnesses. *Id.* Additionally, there was sufficient evidence to support a finding that Union Pacific was not negligent. Sanders admitted that there was nothing wrong with the huck gun, and there was evidence to support the conclusion that the experiment was safe. Specifically, several witnesses testified that the recoil of the huck gun was less than that of a twelve-gauge shotgun. Accordingly, we affirm the circuit court's denial of the motion for new trial, holding that the verdict was supported by substantial evidence.

## VIII. *The Denial of the Motion for New Trial*

Finally, Sanders makes a sweeping argument that the circuit court erred by refusing to grant his motion for new trial. Sanders sought a new trial based on Arkansas Rule of Civil Procedure 59(a)(1), (6) and (8). Specifically, he argued that he was entitled to a new trial because the circuit court (1) refused to give his assumption–of–risk instruction to the jury; (2) improperly instructed the jury on contributory negligence; and (3) improperly sustained an objection to evidence of the mechanical alert issued by Union Pacific after the incident. Sanders also sought a new trial because the jury's verdict was against the weight of the evidence.

We have already addressed each of Sanders's arguments and concluded that they do not merit reversal. Therefore, we affirm on this point as well.

## IX. *Conclusion*

Having determined that Sanders has demonstrated no reversible error, we affirm the circuit court's judgment.

Affirmed.

VIRDEN and VAUGHT, JJ., agree.

17

*Lauck Law Firm, PA*, by: *Chester H. Lauck III*; and *Law Office of H. Chris Christy, PA*, by: *James R. Ferguson*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *Joseph P. McKay*, *Martin A. Kasten*, and *Joshua C. Ashley*, for appellee.